### In re STAR SPRING BED CO.

(Circuit Court of Appeals, Third Circuit. February 15, 1913.)

#### No. 1,691.

BANKRUPTCY (§ 136*)—CONTEMPT—DISOBEDIENCE OF ORDER—PUNISHMENT.

The attorney for a bankrupt corporation, on the evening before the filing of the petition, and after the directors had admitted its insolvency, procured a loan at a bank for the corporation secured by a pledge of its accounts receivable, and with the money took up a number of unma-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tured notes of third persons which the corporation had indorsed and discounted. After the appointment of a receiver on the next day by an order directing the officers, agents, and attorneys of the bankrupt to turn over to him all notes, etc., in their possession, which order was made with the knowledge and consent of the attorney and pending the examination of the bankrupt concerning such notes, the attorney turned the notes over to the president, who destroyed or otherwise disposed of them. *Held*, that the respondent was guilty of a flagrant contempt of the court which justified a definite punitive sentence.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

In Error to the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

In the matter of the Star Spring Bed Company, bankrupt. Mendel Makowsky was adjudged guilty of contempt, and brings error. Affirmed.

A. A. Silberberg, of New York City, for plaintiff in error.

Rosenberg & Levis, of New York City, for trustee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, the Star Spring Bed Company was adjudged bankrupt on April 19, 1911, and one Bilder was duly appointed its receiver. On the same day the receiver served on Mendel Makowsky, its president, a copy of the order of court appointing him receiver, which order directed "all attorneys, agents, officers and servants of said alleged bankrupt forthwith deliver to said receiver all * * * notes, * * * securities and all other choses in action * * * in the possession of them or either of them." Such order had been made with the knowledge of Abraham A. Silberberg, who, by indorsement thereon, as attorney for the bankrupt, consented to the making thereof. At the subsequent taking before the referee of the testimony of Makowsky, Harris Gutman, the treasurer, and Silberberg, who was also the personal attorney of Makowsky, it appeared that on the day previous to the filing of the petition, at a meeting held at Silberberg's office, the directors of the bankrupt conceded its insolvency, and in pursuance thereof a formal acknowledgment of that fact was subsequently signed and filed in the case. Later in the day, and after banking hours, Silberberg went to the Union National Bank of Newark, N. J., and after an interview with the president and cashier thereof obtained a loan of $20,000 on the bankrupt's demand note, securing the same by the assignment of $29,000 of accounts receivable owned by said bankrupt. With this $20,000 Silberberg then took up and received from the bank 29 promissory notes of third parties, which had not matured and which the bankrupt had previously indorsed and had the bank discount. The testimony also showed that Makowsky, who had received the notes from Silberberg, refused to surrender them to the receiver. These

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

203 F.—41

facts were brought to the attention of the court by its receiver, who, in a petition, averred that:

"The said notes have not been destroyed and have not been surrendered to the makers, and that the said notes are in the possession, custody, and control of the said bankrupt and its officers, agents, and attorneys."

He further averred that he feared Gutman and Makowsky might flee the jurisdiction of the court and prayed they be attached and adjudged guilty of contempt and punished for violation of said order. Thereupon the court, having before it the testimony taken and the petition of its receiver, issued an order directing Makowsky and Gutman to appear on a day certain "and then and there show cause why they should not be adjudged guilty of contempt as prayed for in said annexed petition, and why they should not be punished, as may then be determined, for such contempt." This order was duly served on both men. Before the hearing Gutman committed suicide, and Makowsky did not appear at the return day, whereupon the court duly noted Makowsky's default and directed an attachment, on which Makowsky was attached by the marshal. Thereafter Makowsky presented a petition praying, for various reasons, given in excuse, that he be relieved of his default in not appearing as above noted and also that he be granted a hearing on the merits. On consideration thereof the court released Makowsky on bail, and, on his application, a reference was made to a special master to take testimony to be adduced by him for the purpose of purging himself of contempt. Full proofs were taken, the same fully argued, and the court filed an exhaustive opinion. Without now referring to the importance and value of the notes in question, and whether they were, as claimed, accommodation notes, it suffices to say that the court found, inter alia:

"The substitution of bankrupt's book accounts in place of these notes at the bank was for the purpose of canceling the obligations of such alleged accommodation paper. At the time of the serving of such order upon Makowsky, these notes were still in the possession of Attorney Silberberg. Subsequently they were turned over to Makowsky. * * * The attorney knew of the making of such order. In fact, he was instrumental in the making of it and the appointment of the receiver, and, if these notes are property either owned by the bankrupt or in possession of its officers or agents at the time of making such order, Silberberg as the attorney having had possession of them, and Makowsky, as president of the corporation, admittedly having received such notes after the making of such order, both are accountable for their disposition. * * * The withholding of such notes from the receiver, and their subsequent destruction or surrender to the makers, not only frustrated the nullifying of such intended preference, but actually effected it and made impossible an exchange with the bank, and without which it is extremely doubtful that the preference given to it can be avoided. * . * * The failure of Makowsky to turn over these notes after they came into his possession was a disobedience of the court's order. Was it willful and contemptuous? He now pleads ignorance of the contents of that order and couples such exculpation with the statement that if he had known they were wanted by the receiver he would have turned them over.

"But no one impartial to the issue here raised can read the testimony that has been introduced in this case and fail of the conclusion, that Makowsky did know that such notes were wanted by the receiver, and that he purposely prevented them from being turned over. On May 11, 1911, he testified before the referee that he did not have the notes, but that Silberberg had them. Subsequently, and before the 16th of May, to which his further examination had been continued, he obtained them from Silberberg, and after

consultation with Gutman, the treasurer of the company, he, on that very day, and but a few hours before he was again to testify, either alone or in conjunction with Gutman, destroyed or otherwise disposed of them. Silberberg denies that he had the notes on May 12th, but says that he had turned them over to Makowsky before that date. Whether they were actually destroyed or sent to the makers thereof is immaterial. The fact that he obtained them from the bankrupt's attorney after the serving of the order upon him to turn over, and when he knew that they were sought on May 12th, taken in conjunction with the preparation for taking them up before the bankruptcy proceedings were instituted, and the intended purpose for procuring them, and his subsequently disposing of them, speak forcibly, not only upon the knowledge of Makowsky as to his duty to turn them over to the receiver, but of the underlying evil motive for their not being turned over. To my mind it is a clear case of willful and evil-minded contempt of the order of this court, and cannot be lightly regarded in view of the injurious consequences directly falling upon the general creditors in this case, and those likely to follow in other cases if but slight punishment is inflicted. Every one conversant with the administration of bankrupt estates has found numerous manifestations of attempts by bankrupts to secrete their properties from their creditors or to turn them over to favored creditors, with the purpose of either repossessing such property themselves or ingratiating themselves with the favored creditors that they may have their subsequent financial assistance."

An examination of the testimony satisfies us that the court was fully justified in its findings and conclusions. The offense was flagrant. The receiver was the hand of the court, its own officer, appointed, as provided by the statute, "for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition." These notes, as clearly appears, were in the hands of either Makowsky or Silberberg, his attorney, at the very time testimony was being taken explaining the transaction concerning them, and there was a clear intent in the minds of both men that these notes should not be delivered to the court's officer. As the court said, "both were accountable for their disposition." Indeed, Silberberg (and he reflected the attitude of Makowsky, as well as his own disregard of his duty as attorney of the bankrupt and as an officer of the court), when asked why he did not permit the court to decide the controverted question of the ownership of these notes, said, "I will take the responsibility for judging that." If answer to such contention, or condemnation of such conduct, were required. it is found in Gompers v. Buck, 221 U. S. 450, 31 Sup. Ct. 501, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, where the court say:

"If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery."

The very opposite course to that laid down as above by the Supreme Court was adopted by Makowsky and Silberberg in reference to these notes. As a direct result of their willful acts the notes have either been destroyed or have gone beyond their, or the court's, power to reclaim them. In so doing, all possibility of affording any remedial relief to the parties in interest has passed beyond the court's power, and they (Makowsky and Silberberg) have themselves removed the case from the sphere of remedial contempt where a court might make the contempt commitment conditional on the notes being returned, and where, as said in Re Nevitt, 117 Fed. 461, 54 C. C. A. 635, the person

adjudged in contempt "carries the keys of his prison in his own pocket." By their conduct they have gone further and made the case one of punitive contempt where the only thing left is for the court by a definitive sentence to punish for a past disobedience and afford an example to others so minded. Indeed, the disobedient refusal to deliver these notes and their subsequent surrender and destruction has brought about a condition fully described in the words of the Supreme Court in 221 U. S. 442, 31 Sup. Ct. 498, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874:

"On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience."

The sentence and judgment of the court below is therefore affirmed, and the record remanded, with instructions to carry out such sentence.