## In re GUZZARDI.

### GOLUB v. GUZZARDI.
### No. 212.

Circuit Court of Appeals, Second Circuit.
Jan. 21, 1935.

Abraham J. Halprin, of New York City (Irving Barry, of New York City, of counsel), for appellant.

London, Guzik & London, of New York City (Leo Guzik, of New York City, of counsel), for appellee.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (Emanuel Bublick, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States, amicus curiæ.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The bankrupt appeals from an order of the bankruptcy court sentencing him to 60 days' imprisonment for contempt of court. The proceeding was commenced by an order to show cause, supported by the petition of the trustee in bankruptcy, both entitled in the bankruptcy proceeding. The order required the bankrupt to "show cause why he should not be punished for contempt of court for interfering with the orders of this court and with the administration of the estate * * * and in concealing and inducing disobedience of the witnesses to the orders of this court and why he should not be directed to produce for examination * * * Josephone Quartucci, Caroline Quartucci and John Quartucci." The petition stated its purpose in substantially similar form, speak-

ing however of the production of the witnesses as "additional or alternative relief." It concluded with a prayer "that the bankrupt should be punished for contempt of court and should be directed to produce his relatives as witnesses and that he be stayed and enjoined from interfering with the processes of this court and from harboring these witnesses." The bankrupt filed an affidavit containing argumentative denials of the petition, and the case went to trial before the judge. The general purpose of the proceeding was ancillary to disclosing the bankrupt's relation to a restaurant, a broker's account, and an automobile; the trustee asserted that each of these was his property and might be reclaimed for the creditors. To establish that position he wished to examine Josephine Quartucci, the bankrupt's sister, Caroline Quartucci, his niece, and John Quartucci, his brother-in-law; and their appearance to testify he alleged that the bankrupt had prevented. John may be disregarded—nothing was shown as to him; but we will assume that as to both Caroline and Josephine, there was enough evidence to support the finding that he had actively interfered with the trustee's efforts to get their testimony, although Caroline was fully examined before the referee, while this proceeding was in progress. At the conclusion of the evidence the judge committed the bankrupt to prison for sixty days. The most important question is whether the proceeding was obviously criminal from the outset, or from a time early enough to advise him and protect his rights. To prove that it was, the trustee relied especially upon the process and the petition which asked that he be "punished" for having interfered with the processes of the court, and upon the repeated declarations of the judge during the hearings that the proceeding was to "punish" him for contempt. Again, he relied upon the reply to the court, after sentence, of the attorney for Caroline Quartucci acting apparently for the bankrupt, at the moment, that he had assumed from the way the proceeding was going, that he would be imprisoned.

The great importance attached to the characterization as criminal of a proceeding to punish for contempt, dates from Gompers v. Buck's Stove Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, before which the practice had been looser. The Supreme Court there set out the elements which persuaded it that that proceeding had been civil. We read the opinion, not as making crucial any one detail, but rather as summing up the features of a portrait which as a whole was plainly recognizable. If so, our duty here is to learn how far the case at bar may be superimposed upon the facts there. That proceeding was prosecuted by the party aggrieved; it was apparently a part of the civil proceedings in chief, being so entitled; the plaintiff asked costs, and called the respondents to the stand; there was a clause in the prayer asking general relief. The facts here are parallel except that the trustee did not call the bankrupt to the stand and asked no costs. Nevertheless the character of the charge at bar was as equivocal as there; to demand that the respondent should be "punished" did not tell him that he stood in jeopardy of an unconditional imprisonment. "Punishment" is a word apt for civil contempts and constantly so used. Thus, if a man be imprisoned for violation of a decree till he complies with it, he would regard himself as "punished" though he could get out when he chose. Again, he would think that he was "punished" if he were fined the expenses of a civil proceeding, as he might be. It does not distort the language of process to say that the trustee might have meant only to put pressure upon the respondent to produce the witnesses named, by locking him up until he did produce them and fining him for the expenses after he had. Again, some part of the relief asked was civil in any event, and the proceeding bore every evidence of being part of the bankruptcy proceedings. Finally, it was prosecuted by the trustee without the initiative of judge or district attorney. In our opinion its criminal aspect was for these reasons not marked clearly enough to support an unconditional sentence of imprisonment. Bradstreet Co. v. Bradstreet's Collection Bureau, 249 F. 958 (C. C. A. 2); Shulman v. United States, 18 F.(2d) 579 (C. C. A. 6); Monroe Body Co. v. Herzog, 18 F.(2d) 578 (C. C. A. 6); Wakefield v. Housel, 288 F. 712 (C. C. A. 8); Mitchell v. Dexter, 244 F. 926 (C. C. A. 1).

We have ourselves gone further and flatly decided that unless the charge be prosecuted by the district attorney, it cannot be considered as criminal at all. In re Kahn (C. C. A.) 204 F. 581. That would be conclusive upon us now, were it not, that in three other circuits it seems to have been assumed that this was not a sine qua non, though there was little or nothing said about it in the opinions. Kreplik v. Couch Patents Co., 190 F. 565 (C. C. A. 1); In re

Star Spring Bed Co., 203 F. 640 (C. C. A. 3); In re Kaplan Bros., 213 F. 753 (C. C. A. 3); Wingert v. Kieffer, 29 F.(2d) 59 (C. C. A. 4). Cf. Monroe Body Co. v. Herzog, supra (C. C. A.) 18 F.(2d) 578. In spite of these decisions there can, however, be no doubt that prosecution by the judge sua sponte, or by the district attorney, is an important factor in deciding the issue. In the case at bar it was especially important. An assistant district attorney was present during the hearings, or at least for a part of them, observing, but taking no part. Apparently he wished to keep aloof and merely to learn whether anything would transpire to show that a crime had been committed. His presence without participation was surely misleading if a criminal prosecution was in progress; and while the district attorney did indeed seek to intervene upon this appeal, it was then too late. So far as the doctrine is serviceable at all, it can only be to advise the accused of the nature of the claim; and it serves him not at all after the event.

It is perhaps a misfortune that the result should depend upon the form of the proceeding, and it is quite likely that in fact the bankrupt knew what the consequences to him might be, quite as well as though he had been expressly so told. But whatever the value of the distinction, we must assume that Gompers v. Buck's Stove Co., supra, 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, is still the law, and we must give it its proper effect, so far as we can see. Besides, it is of at least some practical consequence to the respondent in such a proceeding to know whether he is charged with crime; the outcome may be severer, and the degree of proof is higher; his conduct may be governed accordingly. We do not say that this must be known at the outset; it is enough if it becomes manifest in season; but manifest it must be, and not for the first time on appeal. Nor does the requirement involve any hardship to the party who promotes the cause, unless he is really bent upon prosecuting and controlling a criminal proceeding as his own. There is no reason why its character should not be expressly declared at the outset and the initiative of the judge secured, or that of the district attorney. If counsel see fit to leave this feature of the cause in nubibus they have themselves to thank for their eventual miscarriage. We will not go through a record, catching at straws, which lead us first one way and then another, and in the end

force us to guess about a matter which could be so easily set right at the beginning.

Order reversed, but without costs.