## McCANN v. NEW YORK STOCK EXCHANGE et al.

### No. 140.

Circuit Court of Appeals, Second Circuit.
Dec. 9, 1935.

Gene McCann, pro se.

Charles H. Tuttle, of New York City, for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from an order fining him $250 for contempt of court and directing that he be committed until he pays. He had sued the New York Stock Exchange, the Curb Exchange, and over six hundred other defendants to recover damages for a conspiracy under the Anti-Trust Acts; the action is at issue in the District Court. Meanwhile he has kept up a sporadic fusillade of broadsides sent to all members of the exchange, of whom many are defendants, abusing the exchange and its officers, the Better Business Bureau, a defendant, and some of the attorneys retained to defend the action. Becoming annoyed at the violence and continuance of these attacks, the defendants applied to the District Court to enjoin the plaintiff from circulating them, and on April 18, 1935, procured an order forbidding him to communicate with them except with the consent of their attorneys, or to circulate among them or their attorneys or counsel "any threatening or derogatory communications." The plaintiff did not appeal from that order, but on April 27, 1935, sent out a leaflet, which was "derogatory" to the governors of the exchange and might be considered "threatening." Thereupon the defendants moved to punish him for contempt. Without preliminary consultation with, or authorization of, the judge, they served a notice of motion for an order, (1) "punishing the plaintiff for contempt of court through willful violation" of the injunction; (2) "for obstructing and attempting to obstruct, the administration of justice" by doing those things which the injunction had forbidden. The notice was supported by affidavits setting forth the order of April 18 and the leaflet of April 27, 1935; the plaintiff appeared and filed an affidavit in opposition; the judge entered an order declaring that he had "willfully knowingly and understandingly violat-

ed" the injunction, and had "committed contempt of this court in that under date of April 27," he had "issued * * * to and circulated among * * * many of the defendants herein," including those who had retained certain named attorneys, "a printed communication or letter * * * which * * * was threatening and derogatory and was sent * * * in willful violation of the said order." It then ordered that "because of such contempt of court the plaintiff be * * * fined the sum of $250 and that such fine be paid to the clerk of this court * * * and * * * upon plaintiff's default" he "shall stand committed." This is the order appealed from.

■■■■ The defendants seek to support it on two grounds: First, because the plaintiff violated the order of April 18th; second, because his communication was ipso facto a contempt of court. The second is thought to follow from the powers of the District Court granted by the original statute of which section 385 of title 28, U.S. Code (28 U.S.C.A. § 385), is the present form. The question turns upon the meaning of the phrase, "so near thereto as to obstruct the administration of justice," introduced (4 Stat. 487), in 1831, after the failure of the impeachment of Judge Peck, and intended to circumscribe the powers of the court as they had existed both under the original statute and at common law. Ex parte Robinson, 19 Wall. 505, 510, 511, 22 L.Ed. 205. That phrase is not indeed to be spatially construed. In re Savin, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150; In re Cuddy, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154; Kirk v. United States, 192 F. 273 (C.C.A. 9). Attempts to intimidate or debauch judges, jurors, or witnesses may be contempts, though they are made far from the courtroom; and while it is true that before Toledo Newspaper Co. v. United States, 247 U.S. 402, 38 S.Ct. 560, 62 L.Ed. 1186, it had been debatable whether public criticism of a judge by a newspaper pending his decision could "obstruct the administration of justice," that decision settled that it could, a doctrine somewhat extended in Craig v. Hecht, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293. Froelich v. United States, 33 F.(2d) 660 (C.C.A. 8), went as far as any decision by holding it a contempt to send letters to a prosecuting attorney advising him that the judge who was to preside at the trial was biased; this on the the-

ory that it might obstruct the trial to induce the prosecutor to recuse the judge. We need not say how far we should agree, for the plaintiff's broadsides are unlike these letters or any of the other acts which have been held to be within the limiting phrase. We may lay aside at once any imputation against the integrity of the district judges; it would be fatuous to suppose that this could affect them, and as mere insult they may not summarily punish it. The defendants' theory seems to be that by undermining their confidence in their attorneys the course of justice may be impeded; at any rate, that is their only even colorable support, for they cannot enjoin, and à fortiorari cannot punish as a contempt, mere abuse of themselves, or of their companies, or of the officers of the exchanges, even though it be libelous. Francis v. Flinn, 118 U.S. 385, 6 S.Ct. 1148, 30 L.Ed. 165; American Malting Co. v. Keitel, 209 F. 351, 353–355 (C.C.A. 2). It is indeed possible to conjure up a situation in which a person might so interpose between client and attorney as to obstruct justice; for instance, he might kidnap the attorney on the eve of trial. We need not say that in no case would such an interloper expose himself to a prosecution for criminal contempt. But we should lose all sense of proportion, were we to extend such a doctrine, if it be a doctrine, to situations like this, for there is not the faintest reason to suspect that any of the defendants have been, or will be, moved a hair's breadth by the fustian emanating from this plaintiff. And indeed it would not obstruct the administration of justice, even though they changed their attorneys; if they did so in season, the trial would go on as planned; if they waited till the eleventh hour, the judge would scarcely grant them a continuance. No doubt it is annoying to be pestered by repeated irresponsible attacks, but only a hypersensitive client would be diverted from the defense of his right by any such device, and it would be a curious jurisprudence which summarily protected the retainer of attorneys. For all such injuries the parties must look to the usual remedies; they gain nothing because the offender is engaged in litigation with them. So far therefore as the punishment depended upon the leaflet of April 27, 1935, as a contempt per se, the order was erroneous and cannot stand.

■ So far as it punished the plaintiff for disobedience of the order of April 18th, other considerations apply. Although, as we have indicated, that order was erroneous, the plaintiff was nevertheless bound to obey it, provided the judge had jurisdiction. Brougham v. Oceanic Steam Nav. Co., 205 F. 857 (C.C.A. 2); Trickett v. Kaw Valley Drainage Dist., 25 F.(2d) 851, 858 (C.C.A. 8); Locke v. United States, 75 F.(2d) 157, 159 (C.C.A. 5). We think that he did have jurisdiction and that the plaintiff was bound to obey, until the order was vacated or reversed. True, it was an injunction passed in an action at law, and therefore without the support of a bill, and procedurally altogether irregular. Yet if a bill had been filed on the equity side and the plaintiff had appeared as defendant, the judge would certainly have had jurisdiction, however little he ought to have exercised it. Under section 397 of title 28, U.S. Code (28 U.S.C.A. § 397), a controversy justiciable only in equity may be transferred thither from the law side; the distinction, if ever jurisdictional, has ceased to be such. Moreover, the plaintiff appeared in answer to the motion and contested it on the merits, thus completing all conditions necessary to jurisdiction.

But though the order of April 18th was therefore coram judice and a prosecution for disobedience of it would lie, the prosecution as actually conducted would not support a criminal punishment. Indeed, the defendants argue that the order did not impose any criminal punishment. In this they are certainly wrong, however ambiguous the character of the prosecution until its end. The affidavits did not suggest that the defendants had suffered any pecuniary damage from the leaflet, nor could they have done so, except that they might have asked that the plaintiff be fined to compensate them, for the expense of the prosecution. But they did not even ask that, and the order, which was presumably drawn by them provided, not that they should receive any part of the fine, but that the plaintiff should pay it to the clerk of the court. It is suggested that we might now amend it so as to make it payable to them; but even if we have the power, we should not be disposed to use it for the violation of an order which ought never to have passed.

■ Nor can we affirm it as punishment for a criminal contempt. The lower federal courts have not been very clear about the proper practice in such applications since Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A. (N.S.) 874. It has been their custom to determine their character, whether civil or criminal, by resort to a number of elements, some purely formal, some substantial; such as the title of the proceeding, whether costs were demanded, whether the parties were examined, who conducted the prosecution. We have followed the same course, the last time in Re Guzzardi, 74 F.(2d) 671, where we cited the more pertinent cases. In re Kahn, 204 F. 581 (C.C.A. 2), is of the same kind; we were mistaken in Re Guzzardi, supra, in saying that that decision went wholly on the theory that the United States did not prosecute. The result of all this has been most unsatisfactory and has defeated its own purpose, which was to advise the respondent at the outset of the nature of the application; indeed, the courts have themselves been repeatedly troubled to gather the truth from the details, trivial and important, which they have considered. Surely it should be possible to find some simple and certain test by which the character of the prosecution can be determined. We think that it is. Criminal prosecutions, that is, those which result in a punishment, vindictive as opposed to remedial, are prosecuted either by the United States or by the court to assert its authority. The first are easily ascertainable; they will be openly prosecuted by the district attorney; it would not seem to be of consequence how they are entitled when that is true. In the second the court may proceed sua sponte without the assistance of any attorney, as in the case of disorder in the courtroom; there can be little doubt about the kind of proceeding when that is done. But the judge may prefer to use the attorney of a party, who will indeed ordinarily be his only means of information when the contempt is not in his presence. There is no reason why he should not do so, and every reason why he should; but obviously the situation may in that event be equivocal, for the respondent will often find it hard to tell whether the prosecution is not a remedial move in the suit, undertaken on behalf of the client. This can be made plain

215

if the judge enters an order in limine, directing the attorney to prosecute the respondent criminally on behalf of the court, and if the papers supporting the process contain a copy of this order or allege its contents correctly. We think that unless this is done the prosecution must be deemed to be civil and will support no other than a remedial punishment. Nothing of the sort was done here and the order must be reversed. No doubt the plaintiff, advised as he will be by this opinion, will move to vacate the order of April 18, 1935, which being interlocutory still remains within the power of the District Court. Should he succeed, the question may arise whether he can be punished for contempt of an order vacated before the prosecution is concluded; or if he can, whether it would be an abuse of the court's power so to punish him. These questions are not before us and we say nothing regarding either.

Order reversed.