AUREA PÉREZ, Plaintiff and Appellee, *v.* CRESCENCIO
ESPINOSA, Defendant and Appellant.

No. 10950. Argued October 1, 1953.—Decided January 15, 1954.

*Santos P. Amadeo* and *Rafael S. Vidal* for appellant. *Antonio J. Matta* for appellee. *José Trías Monge, Attorney General,*

and *Rafael L. Ydrach Yordán, Assistant Fiscal of the Supreme Court,* for the People.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The problems arising from the action for support filed against Crescencio Espinosa by Aurea Pérez on behalf of Ruth Pérez, alleged natural daughter of Espinosa, are once more before this Court. The case of *Espinosa* v. *Ramírez,* 71 P.R.R. 10, involved a habeas corpus proceeding filed by Espinosa on the facts and contentions which follow.

In a civil action for support, the former District Court of Humacao rendered judgment ordering Crescencio Espinosa to pay to Ruth Pérez, his alleged natural daughter, a weekly allowance of $5. The defendant refused to comply with the judgment and, at the request of the minor's mother, he was summoned to show cause why he should not be punished for contempt. In view of this, the court found him guilty of civil contempt and sentenced him to imprisonment in the district jail of Humacao for an indefinite term until he complied with the judgment in the action for support. Espinosa filed a petition for habeas corpus alleging that the court lacked jurisdiction to render that judgment. This Court held that the judgment was valid, in view of the inherent power of the courts to enforce their judgments by the coercive means of imprisonment for an indefinite term.

Subsequently, this Court had under consideration another habeas corpus petition filed by Espinosa and we ordered his release, in view of the fact that his commitment in jail for two years and more than four months, in compliance with the judgment for an indefinite term, was a cruel and unusual punishment. *Espinosa* v. *Ramírez, Warden,* 72 P.R.R. 842.

Following Espinosa's release, the complaining party filed on April 28, 1952 a motion praying that he be punished for contempt, on the ground that he had failed to comply with the duty imposed by judgment to pay a weekly allowance of $5 for the support of his alleged daughter. A hearing was held on that motion and the court of Humacao found that it

was economically impossible for defendant to comply with that judgment. Subsequently, plaintiff filed another motion praying that the amount of the support allowance be reduced. The court of Humacao granted that motion and ordered defendant to pay the minor a weekly allowance of $1.50.

On May 22, 1952, plaintiff filed a motion, through her attorney, within the main action for support, entitled "Contempt Motion," alleging that Espinosa had failed to comply with the court's recent order (to pay $1.50 weekly), and requesting that defendant be summoned "to show cause why he has failed to comply with that order and why he should not be punished for contempt." A hearing was held on that motion. Defendant admitted that he had not complied with the order, alleging that his inability was due to his economic condition. Plaintiff's counsel stated as follows:

"We submit the case admitting that the court's order was not complied with."

Defendant stated he would submit no evidence. Thereupon the presiding judge of the court of Humacao addressed defendant personally and asked him several questions, which he answered. The following took place:

"The court: Let us hear the evidence.

"Lic. Matta: We submit the case admitting that the court order was disobeyed.

"The court: That he has not deposited any amount.

"Lic. Vidal: Explaining his failure to comply because he is in no condition to comply.

"The court: Is the case submitted?

"Lic. Amadeo: Yes, Your Honor.

"The court: Aren't you going to offer any evidence?

"Lic. Amadeo: That's all, Your Honor.

"The court: That's all. In this case, you were sentenced by the court to pay a weekly allowance of $5 to plaintiff Aurea Pérez. Subsequently, the court modified its order and reduced the allowance for support to $1.50 weekly. That was on May 16, 1952. Since then, you admit, you have not deposited any of those amounts in this court. Is that true, Mr. Espinosa?

"Defendant: I have made no deposit.

"The court: You have made no deposit. Your attorney advises that the only reason for not complying is that you are in no condition to deposit the sum of $1.50.

"Defendant: Yes, Your Honor, I am subject to Church orders; there is nothing I can do about it.

"The court: You mean you are subject to orders?

"Defendant: The Church has given orders not to send me any amount and I so advise the court.

"The court: The court already ruled that you were in a position to pay a weekly allowance of $1.50 for the support of your daughter and of Aurea Pérez; also, because you are the minister of that Evangelical Church. Since you have disobeyed the order, the court finds you guilty of contempt and imposes a penalty of 25 days' imprisonment in jail.

"Lic. Amadeo: Your Honor, I move for a reconsideration of the court's ruling, in the first place, if this is a civil contempt . . .

"The court: No, it's criminal; the court has sentenced him for criminal contempt."

The court rendered final judgment sentencing the defendant to 25 days' imprisonment in jail and ordered the marshal to commit him. Thereupon defendant gave bail and appealed to this Court, assigning the following errors:

"First Error: The trial court erred in sentencing appellant, since the allegations of the complaint were not proved.

"Second Error: The trial court erred in sentencing appellant for criminal contempt, since it was not proved beyond a reasonable doubt that he disobeyed the court's order.

"Third Error: The court erred in sentencing appellant, since it was not proved that he had any criminal intention to disobey the court."

■■ The Court of Humacao committed a fundamental error of procedure which voids the judgment. First of all, it should be stated that this Court, in the *Espinosa* cases already cited and on the authority of *Dubón* v. *Casanova*, 65 P.R.R. 786, and *Gompers* v. *Buck Stove and Range Co.*, 221 U. S. 414 *et seq.*, has adopted a rule, which we now ratify, establishing the difference between civil and criminal contempt. In civil contempt, the sentence imposes a penalty for

an indefinite term, which shall be effective until defendant complies with his primary duty to pay for the support, as in the instant case. As already stated, the main purpose of a judgment of such nature is to benefit the other party and to promote his private interests, since the defendant can open the doors of his prison by fulfilling his primary and personal duty, thereby giving complainant an opportunity to obtain the relief or reparation which she actually seeks. The sentence in civil contempt is not punitive and the imposition of the penalty is not its primary purpose. An indefinite penalty serves only as a means to achieve the essential purpose of obedience to the original order, for the benefit of the other party. On the other hand, the sentence in criminal contempt is for a fixed term of imprisonment or for a fixed fine or penalty, to be served or paid irrespective of the obedience or disobedience to the original order or obligation. Its basic purpose is to vindicate the authority and dignity of the court. It could, of course, serve to encourage obedience to the original order for the purpose of avoiding future prosecutions on the part of defendant. But that would be an incidental purpose or consequence. The essence consists in the imposition of a fixed and unconditional punishment to defendant for offending the court.

■■ In the earlier *Espinosa* cases, the sentence was for civil contempt, for an indefinite term, subject to the fulfillment of the obligation to provide support. However, the judgment appealed from in the case at bar is for criminal contempt, and it was so expressly stated by the Court of Humacao after pronouncing sentence in open court. It is for a fixed term of 25 days in jail, and this imprisonment is not subject to the fulfillment of his obligation to provide support.

However, the doctrine generally accepted by the Supreme Court of the United States, the federal courts and the majority of the state courts, doctrine which we adopt, is to the effect that in order for a sentence in criminal contempt to

be valid, the proceeding instituted must be as for criminal contempt, and the defendant is entitled to be informed at the outset that the proceeding is of a criminal nature which might result in the imposition of a sentence for criminal contempt, for a fixed term or penalty, in order to enable him to know in the first place the form of contempt and to have the opportunity to allege in his behalf certain defenses and rules which would be proper in a criminal proceeding such as the presumption of innocence, the privilege against self-incrimination, and that he must be proved guilty beyond a reasonable doubt. *Gompers* v. *Buck Stove & Range Co.*, *supra; In re Guzzardi*, 74 F. 2d 671, opinion of Judge Learned Hand; *Federal Trade Commission* v. *A. McLean & Son*, 94 F. 2d 802; *McCann* v. *New York Stock Exchange*, 80 F. 2d 211, opinion of Judge Learned Hand; *In re Eskay*, 122 F. 2d 819, opinion of Judge Clark; *Parker* v. *United States*, 153 F. 2d 66, opinion of the First Circuit Court, Judge Magruder: *State* v. *Verage*, 187 N. W. 830; Dangel, *Contempt*, pp. 196, 197 *et seq.*, 17 C.J.S. 7, 77, 78, 110; *cf. Fox* v. *Capital Co.*, 299 U. S. 105, opinion of Judge Cardozo.

■■ According to the authorities cited in these criminal contempt cases, it is not absolutely necessary to follow the classical criminal proceeding, independently of the original civil action, or to institute such proceeding with a formal accusation. Within the civil action itself, where there is disobedience to a court order, if the proceeding is to result in a sentence for criminal contempt, the defendant should be informed at the outset of the contempt incident, that it might result in the imposition of a sentence for criminal contempt, that is, the imposition of a fixed penalty, and that the purpose is that the incidents relating to the contempt should have the characteristics of a criminal proceeding, in order that defendant may be aware of his opportunity to invoke his proper rights and defenses. The *Gompers* case, *supra*, laid down this general rule and pointed out the need for achieving the basic purpose of giving such information

in advance to defendant, as a condition necessary for the validity of any sentence rendered for criminal contempt. But, as stated by Judges Clark and Learned Hand in the cases cited, the opinion in the *Gompers* case did not make clear the character of the exact procedure to be followed. But the criminal proceeding for contempt being *sui generis* aimed at vindicating the court's authority, the courts can set up their own procedure provided defendant is timely advised that the contempt incident, even within the main cause, involves a charge, not merely by the plaintiff against defendant, but by the State or the People of Puerto Rico in our case, against defendant, for the purpose of vindicating the court's authority, and that it might result in a sentence for a fixed term or penalty. To this effect, in the opinions delivered by Judges Clark, Hand, and Magruder, the following classes of procedure are approved.

(1) The prosecuting or district attorney may intervene to file the corresponding motions and hear the pertinent evidence on behalf of the State.

(2) Even though the prosecuting attorney may not intervene, the court may, by a special order, institute the proceeding and appoint an attorney for complainant to handle the proceeding and the presentation of the evidence, complainant and his attorney being in a better position to know the nature of the necessary evidence.

(3) The aggrieved party itself could institute the proceeding by motion or complaint, but, in any event, the court should enter a special order informing the defendant of the criminal character of the proceeding, or advising him to show cause why he should not be sentenced to serve a fixed term in jail, or to pay a fixed fine.

In the recent case of *United States v. Mine Workers*, 330 U. S. 258, 295 *et seq.*, the Supreme Court of the United States ratified substantially the same principles as are stated in this opinion. It stated that Rule 42 (b) of the Federal Rules of Criminal Procedure follows the suggestion in the

case of *MacCann* v. *New York Stock Exchange, supra.* Although not applicable to our courts, it is provided in that rule that the notice should describe the criminal contempt charged as such, and that the charge can be made orally by the judge in open court in the presence of defendant, or at the request of the prosecuting attorney or an attorney designated by the court for such purpose, by an order to show cause or a bench warrant. In *United States* v. *Mine Workers, supra,* it was held that the defendants enjoyed all the rights and privileges accorded to defendants in criminal contempt cases, and it was stated that both the civil and the criminal contempt could be carried on in the main equity suit.

Of course, if the proceeding results in a judgment for civil contempt, it is not necessary to observe the requisites indicated above. However, if the result is to be, as was in the instant case, a judgment for criminal contempt, the defendant should be given the preliminary information to which reference has already been made. In the case at bar, such preliminary information was not given to the defendant at any time. On the contrary, the action was prosecuted exclusively as if it were of a civil character, and plaintiff's attorney appeared solely on her behalf, as a private litigant party, without advising defendant previously that a fixed penalty might be imposed on him. Therefore, the judgment for criminal contempt was null and void.

We realize that it might be argued that no technical and subtle distinction should be established between civil and criminal contempt, and that the main point is to determine whether or not there was disobedience to the court order. But there is a significant difference between a judgment that imposes a fixed penalty and a judgment that imposes an indefinite and conditional penalty. The opportunity of a defendant to assert the fundamental rights which he has as defendant in a criminal proceeding is neither subtle nor technical.

The judgment appealed from is reversed and set aside and defendant exonerated, without prejudice to any possible subsequent proceedings not inconsistent with this opinion.