658 F.2d 60
 MUSIDOR, B. V., and Michael Phillip Jagger, Keith Richards,
William George Wyman, Charles Robert Watts, p/k/a
The Rolling Stones, Plaintiffs-Appellees,
v.
GREAT AMERICAN SCREEN, a/k/a Be-Down Home Designs and Leon
Dymburt, Defendants-Appellants.
WINTERLAND CONCESSIONS CO., a California Corporation, d/b/a
Winterland Concessions et al., Plaintiffs-Appellees,
v.
GREAT AMERICAN SCREEN DESIGNS, LTD., a/k/a Down Home
Designs, Ltd., and Leon Dymburt, Defendants-Appellants.
 No. 1535, Docket 81-1140.
 United States Court of Appeals,
Second Circuit.
 Argued June 9, 1981.
Decided August 21, 1981.
 
 Janet Cunard, Morosco & Cunard, White Plains, N. Y., for defendants-appellants.
 Peter A. Herbert, Parcher & Herbert, New York City, for plaintiffs-appellees.
 Before OAKES and KEARSE, Circuit Judges, and RE, Chief Judge, United States Court of International Trade.*
 OAKES, Circuit Judge:
 
 
 1
 This appeal by Leon Dymburt and Great American Screen is from a criminal contempt conviction for violating a preliminary injunction. Originally two suits were brought in the United States District Court for the Eastern District of New York, Eugene H. Nickerson, Judge, for commercial exploitation by way of "bootlegging" silkscreened T-shirts. In one suit brought on June 30, 1978, by Musidor, B. V., and the individuals constituting the "rock" group known as "The Rolling Stones" (the Rolling Stones suit), Judge Nickerson entered a preliminary injunction which upon consent of Great American Screen Designs, Ltd., was made permanent on March 29, 1979. The second suit was brought by Winterland Concessions Co., a California corporation holding commercial rights to the trademarks of the rock groups known as "The Grateful Dead" and "Fleetwood Mac" (the Grateful Dead suit), and on November 30, 1979, Judge Nickerson entered a preliminary injunction in that case also.
 
 
 2
 When it appeared that Great American and Dymburt were violating the preliminary injunctions against dealing in any goods upon which were displayed a trademark of the respective musical groups, the plaintiffs-appellees sought an order under Federal Rule of Criminal Procedure 42(b)[1] directing the United States Attorney or appointing a special attorney to prosecute charges of criminal contempt. Parcher & Herbert, who represented the plaintiffs-appellees in both actions, were appointed as special attorneys to prosecute the charges. After hearing evidence the court found that both Dymburt and Great American deliberately violated the order of June 30, 1978, in the Rolling Stones case but found Dymburt innocent, though Great American guilty, of violating the November 30, 1979, order in the Grateful Dead case. A sentence of sixty days was imposed upon Dymburt and concurrent fines of $10,000 were imposed upon Great American.
 
 
 3
 On appeal the appellants argued that their guilt was not proved beyond a reasonable doubt; that their prosecution by the attorney for a civil litigant violated their due process rights; that the charges were improperly prosecuted; that the appellant Great American was charged with a serious contempt as to which it had a right to trial by jury; and, finally, that their sentences were excessive. We affirm.
 
 
 4
 Appellants' first point, that guilt was not proved beyond a reasonable doubt, can be readily disposed of. In the Rolling Stones case Judge Nickerson found credible testimony from Paul Keim. Keim worked as a silkscreen technician for Down Home Designs, Ltd., and its successor, Great American Screen Designs, Ltd., from June 1977 to May 1979. According to Keim, the day after the Musidor complaint was filed the defendant Dymburt told him to move ten to twenty screens used to print the Rolling Stones T-shirts, from the Great American premises on the fifth floor of 144 Spencer Street in Brooklyn, New York, to be hidden in the basement of the building. He further testified that through July 1978, after the June 30 preliminary injunction had been issued, the defendants continued to print Rolling Stones T-shirts; the printing was done by night shifts using and then resecreting the screens stored in the basement. While Keim worked only the day shift, he said he occasionally assisted in moving the screens upstairs. He also said that before he left at night he saw the screens set up on the press to be run, and when he returned in the morning the shirts were "boxed" in plastic bags waiting to be picked up by salesmen. While Keim's testimony was disputed in part by the building superintendent and his assistant, we cannot hold that Judge Nickerson's findings of guilt beyond a reasonable doubt in the case of Dymburt and Great American were clearly erroneous. Appellants also raised several arguments going to Keim's credibility, all of which had been presented at trial in the form of cross-examination, but we find none of them compelling.
 
 
 5
 The judge's finding of Great American's guilt in the Grateful Dead case is similarly nonreversible. Evidence in the case was based upon testimony of a licensed private investigator, John McNally, who conducted surveillance at 144 Spencer Street on behalf of the plaintiffs. Judge Nickerson accepted his testimony that on May 14, 1980, he trailed a blue Dodge van carrying three cellophane packs of Grateful Dead T-shirts like those he had seen at the offices of plaintiff's counsel. He further testified that he followed the van to the Nassau Coliseum where he purchased a Grateful Dead T-shirt from the passenger in the van. On May 16, 1980, McNally saw a distinctive Chevrolet Nova arrive at 144 Spencer Street, heard the driver ask the elevator operator for the fifth floor and saw the man leave with an armload of cellophane packs containing T-shirts which he put in the trunk of the vehicle. McNally followed the Nova to Nassau Coliseum and proceeded to purchase two Grateful Dead T-shirts from the driver of the car. Appellants on appeal quarrel with the inferences that may be drawn from McNally's testimony, pointing out that McNally could not tell what was in the plastic bags when they were carried down to the respective van and automobile or what the vehicles had contained before they arrived at the defendant's premises. Appellants also challenge McNally's claim that what he saw in the van were Grateful Dead T-shirts because he saw only a portion of the inscription on them. But these are merely quarrels as to what inferences to draw. And while there was testimony from another silkscreen T-shirt maker that the exhibits could have been printed on one of his own or a competitor's machines, there was no evidence to suggest that in fact they had been so printed, and there was ample evidence to support the verdict.
 
 
 6
 Appellants next argue that due process was violated by the appointment of civil plaintiff's counsel to prosecute the criminal contempt. The injunctions violated by the appellants were issued in civil actions in which substantial damages were sought. Appellants contend that the prosecuting attorney's financial interest in the outcome of the pending civil actions was an inducement for him to act unfairly in the trial of the contempt charges. Therefore the criminal contempt should have been prosecuted by the United States Attorney or by a disinterested attorney appointed under Rule 42(b).
 
 
 7
 In the leading case of McCann v. New York Stock Exchange, 80 F.2d 211, 214 (2d Cir. 1935), cert. denied sub nom. McCann v. Leibell, 299 U.S. 603, 57 S.Ct. 233, 81 L.Ed. 444 (1936), Judge Learned Hand acknowledged that to prosecute a criminal contempt committed outside the presence of the court, "the judge may prefer to use the attorney of a party, who will indeed ordinarily be his only means of information .... There is no reason why he should not do so, and every reason why he should ...." Appellants are well aware that the Advisory Committee on Rules relied upon the McCann case in establishing Federal Rule of Criminal Procedure 42. In particular, Paragraph (b) of Rule 42 provides that notice clearly describe the criminal contempt so as to obviate the confusion experienced by the accused in the McCann proceedings as to whether he was being prosecuted criminally or civilly. Nevertheless, appellants argue that an attorney for a civil litigant is not properly assigned to prosecute another party for criminal contempt, citing In re Lahm Industries, Inc., 609 F.2d 567 (1st Cir. 1979); Ramos Colon v. United States Attorney for District of Puerto Rico, 576 F.2d 1 (1st Cir. 1978); and Kienle v. Jewel Tea Co., 222 F.2d 98, 100 (7th Cir. 1955). These cases hold merely that the original civil litigant is not a party in interest and therefore has no standing to prosecute an action for criminal contempt on his own initiative, and thus they lend no support to appellants' argument.
 
 
 8
 Appellants also cite Brotherhood of Locomotive Firemen and Enginemen v. United States, 411 F.2d 312, 319 (5th Cir. 1969), which makes the broad statement that "the National Sovereign, through its chosen law officers, should be in control of criminal contempt proceedings." There the court found a "due process deficiency" because the notice of charges was vague and only one day was allowed to prepare the defense. Id. at 318-19. That was not the situation in the case at bar, nor have appellants claimed any such deficiency.
 
 
 9
 Indeed, we have investigated the record to determine whether there were any conceivable due process violations arising out of the prosecution of the criminal contempt case by the plaintiffs-appellees' counsel, and have found none. The notice of motion under Rule 42(b) spoke clearly of criminal contempt charges and defined the charges in detail; annexed to the motion were affidavits of the key witnesses, whose testimony was elicited at the contempt hearing. The accompanying memorandum of law specifically referred to 18 U.S.C. § 401, the criminal statute empowering the court to punish disobedience of its lawful orders by fine or imprisonment. The defendants had approximately six months within which to prepare a defense to the charges and to make whatever motions they deemed appropriate. Following the initiation of contempt proceedings, no effort was made by the plaintiffs in the underlying civil litigation to pursue discovery, and for a period of about one year from when the notice of motion was filed, the civil proceedings remained at a standstill. The contempt defendants were afforded the presumption of innocence, were not compelled to testify, and elected not to take the witness stand. No testimony elicited in the civil proceeding, including the testimony at the preliminary injunction hearings, was used at the contempt proceedings. The plaintiffs never sought either damages or costs. The standard of proof applied was guilt beyond a reasonable doubt. Given, then, that all of the customary due process rights in a criminal case were accorded to the plaintiffs-appellants, we distinguish Brotherhood of Locomotive Firemen on its facts and decline to follow its sweeping dictum.
 
 
 10
 Neither Rule 42 nor the Due Process clause requires the court to select counsel from the staff of the United States Attorney to prosecute a criminal contempt. The practicalities of the situation when the criminal contempt occurs outside the presence of the court but in civil litigation require that the court be permitted to appoint counsel for the opposing party to prosecute the contempt. There is no fund out of which to pay other counsel in such an event, nor would it be proper that he be paid by the opposing party. This is not the kind of case for which legal aid societies or public defenders are available. In short, we follow the above quoted statement by Judge Hand in McCann. See also Frank v. United States, 384 F.2d 276, 278 (10th Cir. 1967) (SEC attorney appointed in SEC case), aff'd on other grounds, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); United States ex rel. Brown v. Lederer, 140 F.2d 136, 138 (7th Cir.), cert. denied, 322 U.S. 734, 64 S.Ct. 1047, 88 L.Ed. 1568 (1944). See generally Dobbs, Contempt of Court: A Survey, 56 Cornell L.Rev. 183 (1971).
 
 
 11
 Appellants argue that after the motion to appoint an attorney was granted, the charges were not properly prosecuted because no application was made under Rule 42(b) for an order to show cause or an order of arrest, and the prosecution was not brought in the name of the Government. However, we believe that the notice of motion denominated "Notice of Motion to Designate Special Prosecutor of Criminal Contempt Charges" clearly sufficed as an application for an order to show cause. Annexed to the papers were copies of court orders, affidavits of the key witnesses, and a memorandum of law with reference to the appropriate statutes. The defendants were given a detailed description of the charges and a preview of the principal witnesses' testimony. No further technical pleadings were required. See Yates v. United States, 316 F.2d 718, 723 (10th Cir. 1963). Appellant Dymburt also claims that he lacked adequate notice of the criminal contempt proceedings because he was not a named party to the Rolling Stones action. But as president and chief operating officer of Great American, Dymburt admittedly was bound by the order enjoining Great American, its officers and directors from engaging in specific prohibited conduct, and his attorney received notice of the motion claiming that Dymburt had violated that order.
 
 
 12
 Appellants argue that a jury trial was required, although they fail to refer us to any indication in the record that one was requested or sought. The Supreme Court has held that a jury trial must be available in a criminal contempt case only when the offense is more than a petty one. See Taylor v. Hayes, 418 U.S. 488, 495, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 (1974); Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). Relying upon 18 U.S.C. § 1,[2] the Court has determined that a criminal contempt can be deemed a petty offense when the penalty authorized for it does not exceed six months' imprisonment. Cheff v. Schnackenberg, 384 U.S. 373, 379, 86 S.Ct. 1523, 1525, 16 L.Ed.2d 629 (1966). See also Codispoti v. Pennsylvania, 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974); Baldwin v. New York, 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970); Frank v. United States, 395 U.S. 147, 149-50, 89 S.Ct. 1503, 1505-06, 23 L.Ed.2d 162 (1969). In this instance Congress has not expressed a judgment as to the seriousness of the offense by fixing a maximum penalty which may be imposed for criminal contempt. Therefore, under the rule of Cheff, readopted in Bloom, 391 U.S. at 211, 88 S.Ct. at 1487, we must look to the penalty actually imposed as best evidence of the seriousness of the offense. 384 U.S. at 379-80, 86 S.Ct. at 1526. See also Duncan v. Louisiana, 391 U.S. 145, 162 n.35, 88 S.Ct. 1444, 1454 n.35, 20 L.Ed.2d 491 (1968). Since Dymburt's sentence did not exceed six months' imprisonment, his criminal contempt was a petty offense within the meaning of Cheff, Bloom, Taylor, and Baldwin, and thus he was not entitled to a jury trial.
 
 
 13
 The case is different with respect to Great American, upon which concurrent fines of $10,000 each were imposed, because 18 U.S.C. § 1(3) limits a fine for a "petty offense" to $500. It might seem to follow, then, that Great American was being tried for a serious offense. However, the Supreme Court held in Muniz v. Hoffman, 422 U.S. 454, 475-77, 95 S.Ct. 2178, 2190-91, 45 L.Ed.2d 319 (1975), that the imposition of a fine for criminal contempt, which Congress has not declared to be a serious offense, may exceed the sums specified in 18 U.S.C. § 1. In deciding Cheff and the subsequent cases developing the concept of jury trial in the context of criminal contempt,[3] the Court accorded the language of 18 U.S.C. § 1 "no talismanic significance" in cases of fine "unaccompanied by imprisonment." 422 U.S. at 477, 95 S.Ct. at 2190. Distinguishing imprisonment and fines, the Muniz Court went on to observe, "It is not difficult to grasp the proposition that six months in jail is a serious matter for any individual, but it is not tenable to argue that the possibility of a $501 fine would be considered a serious risk to a large corporation or labor union." Id. The Court did not reach the issue whether there is any constitutional right to a jury trial where a fine alone is imposed. But it did find that a fine of $10,000 imposed upon a union which collects dues from some 13,000 members is not of such magnitude as to deprive the union of whatever Sixth Amendment right it might have to a jury trial on charges of violating a district court order prohibiting picketing of a publishing plant. In the case at bar there was testimony that Great American had gross revenues of $60,000 to $75,000 from the illicit sale of Rolling Stones T-shirts at a single performance in Philadelphia, and in light of this and other testimony in the case we cannot say that the fine of $10,000 deprived Great American of a constitutional right, at least where it never made any request for a jury trial.
 
 
 14
 From what we have said, the argument that the sentences were excessive leaves us totally unpersuaded.
 
 
 15
 Judgment affirmed.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 Rule 42(b) reads as follows:
 Disposition upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of any attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.
 
 
 [2]
 18 U.S.C. § 1 provides as follows:
 Notwithstanding any Act of Congress to the contrary:
 (1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony.
 (2) Any other offense is a misdemeanor.
 (3) Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense.
 
 
 [3]
 See Codispoti v. Pennsylvania, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); Taylor v. Hayes, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968)