**UNITED STATES of America, Appellee,**

v.

**Roger AGAJANIAN, Appellant.**

**No. 1045, Docket 87–1445.**

United States Court of Appeals,
Second Circuit.

Argued May 4, 1988.
Decided July 19, 1988.

Roger Agajanian, Santa Ana, Cal., pro se.

George J. Terwilliger, III, U.S. Atty., D. Vt., Burlington, Vt., (R. Jeffrey Behm, Asst. U.S. Atty., of counsel), for appellee.

Before OAKES, KEARSE and PIERCE, Circuit Judges.

OAKES, Circuit Judge:

Roger Agajanian, a California attorney, appeals his conviction on two counts of criminal contempt by the United States District Court for the District of Vermont, Albert W. Coffrin, Chief Judge. Agajanian claims that he was entitled to a jury trial, that the court allowed the improper use of a witness and impeachment evidence, and that his actions did not take place in the presence of the court, making conviction under 18 U.S.C. § 401(1) (1982) inappropriate. Because none of Agajanian's arguments has merit, we affirm.

## FACTS

Agajanian and an associate, Michael Shippee, represented David Callaway, a Californian who had been indicted on various drug charges in the District of Vermont. Agajanian sought to have the case transferred to the Central District of California, but Judge Coffrin denied the motion and ultimately scheduled the trial to begin on December 10, 1985. While seeking an appeal of this order, Agajanian advised his client to remain in California, and apparently instructed Maureen Hallett, a law clerk in his office, to have Callaway's mother admitted to a hospital in California, to provide an excuse for Callaway's absence on the scheduled trial date. On December 9 this court declined to stay the district court's proceedings. On December 10 Agajanian, after having arrived over three hours late, told the court that Callaway's mother had had a heart attack and that Callaway had been forced to remain in California in order to admit her to a hospital. He also told the court that Callaway would take a flight from California to Vermont that afternoon. Callaway did not leave California, and at 1:00 p.m. the following day the district court issued a bench warrant for Callaway's arrest. On December 12, Agajanian represented to Donald Munoz, the Assistant United States Attorney ("AUSA") who was prosecuting that case, that Callaway had started on his way to Vermont, but that a snowstorm in the Midwest had forced him to return to California. During this time Callaway had been in contact with a California attorney who informed Agajanian that he would be entering an appearance as Callaway's new counsel. The new attorney contacted AUSA Munoz and arranged to have Callaway come to Vermont. On December 19 Callaway and his new attorney appeared in the district court and entered a guilty plea to two of the nine counts in the indictment. The charges stemming from Callaway's failure to appear were dismissed.

Agajanian was charged with two counts of criminal contempt, 18 U.S.C. § 401, the first for unexcused lateness on December 10, 1985, 18 U.S.C. § 401(3), and the second for making misleading and incomplete statements to the court on December 10 and 11, 1985, 18 U.S.C. § 401(1). After a seven-day bench trial, Agajanian was found guilty on both counts.

## DISCUSSION

■ Agajanian's first argument on appeal is that he was entitled to a jury trial on the contempt charges. However, trial by jury is not guaranteed when a defendant is charged with a petty offense. *Taylor v. Hayes*, 418 U.S. 488, 495, 94 S.Ct. 2697, 2701–02, 41 L.Ed.2d 897 (1974). We previously have held "that a criminal con-

tempt can be deemed a petty offense when the penalty authorized for it does not exceed six months' imprisonment." *Musidor, B.V. v. Great American Screen,* 658 F.2d 60, 65 (2d Cir.1981), *cert. denied,* 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982); *see also Sassower v. Sheriff of Westchester County,* 824 F.2d 184, 188–89 (2d Cir.1987). Section 401 does not fix a maximum penalty for violation. When a statute does not itself provide a maximum penalty, the court will look to the sentence actually imposed. *Bloom v. Illinois,* 391 U.S. 194, 211, 88 S.Ct. 1477, 1487–88, 20 L.Ed.2d 522 (1968); *Musidor,* 658 F.2d at 66. Here the United States included in its order to show cause a provision that the sentence would not exceed six months. The actual penalty that was imposed (three months), coupled with the notice to Agajanian that the maximum penalty sought was six months, *see United States v. Marthaler,* 571 F.2d 1104, 1105 (9th Cir.1978), makes it clear that Agajanian was not entitled to a jury trial.

■ Agajanian next claims that a number of errors were committed in regard to the testimony of Maureen Hallett, a law clerk in Agajanian's firm. His first argument, that Hallett was compelled to testify without first being informed of her Fifth Amendment rights, is unavailing, as he lacks standing to raise the issue. The privilege against self-incrimination is personal, *United States v. Tribunella,* 749 F.2d 104, 107 n. 1 (2d Cir.1984); *United States v. Minor,* 398 F.2d 511, 513 (2d Cir.1968), *aff'd,* 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969), and a defendant may not assert the rights of a witness. *Tribunella,* 749 F.2d at 107 n. 1.

■ Agajanian also claims that the district court acted improperly in calling Hallett as a witness and allowing the parties to cross-examine her, without the court having first conducted a direct examination. The district court clearly has the power to call its own witnesses, Fed.R.Evid. 614(a), and has considerable discretion in conducting any interrogation under Fed.R.Evid. 614(b), *see United States v. Zepeda–Santana,* 569 F.2d 1386, 1389 (5th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3098, 57 L.Ed.2d 1138 (1978), provided that the court maintains an appearance of impartiality, *United States v. Vega,* 589 F.2d 1147, 1153 (2d Cir.1978). The district court's decision to forego any direct examination did not in any way prejudice Agajanian, and we can see no way in which the purposes of the rule would be advanced by requiring the trial judge personally to conduct a direct examination. In short, there was no error in calling the witness nor in the method of examination.

■ Agajanian also claims that the Government's use of the transcript of a taped telephone conversation between Hallett and a third party as a prior inconsistent statement to impeach Hallett's credibility was improper. His first argument on this point is that the transcript was not actually inconsistent with Hallett's trial testimony and therefore should not have been used. However, noting that the determination of whether statements are in fact inconsistent is committed to the sound discretion of the district court, *United States v. Jones,* 808 F.2d 561, 568 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987), and that "statements need not be diametrically opposed to be inconsistent," *id.,* we find no fault with the court's decision to allow the transcript to be used for impeachment. *Cf. Victory v. Bombard,* 570 F.2d 66, 69–70 (2d Cir.1978) (no error where trial judge barred admission of prior statements where he was not persuaded that they and the trial testimony were inconsistent); Fed.R.Evid. 613(a).

■ Agajanian also argues that the Government's failure to provide him with a copy of this transcript before trial violated the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Fed.R.Crim.P. 16(a)(1)(C). However, since Agajanian has made no showing "that the pretrial disclosure of the disputed evidence would have enabled him significantly to alter the quantum of proof in his favor," *United States v. Whiteside,* 810 F.2d 1306, 1308 (5th Cir.1987), nor any showing of how the transcript would have assisted his defense or that "there is a reasonable possibility that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87

L.Ed.2d 481 (1985), his *Brady* and Rule 16 claims fail.

Agajanian's final claim is that his conviction under section 401(1) was improper because the acts complained of occurred outside the presence of the court. This argument lacks legal or factual support. Section 401(1) punishes "[m]isbehavior of any person in [the court's] presence or so near thereto as to obstruct the administration of justice." Here the contumacious conduct, consisting of the failure to appear for trial without excuse and Agajanian's incomplete and misleading statements to the court, clearly occurred in the court's presence. *Cf. In re Farquhar,* 492 F.2d 561, 563 (D.C.Cir.1973) (attorney's tardiness is misbehavior in court's presence). Although the distinction between contempts occurring in the court's presence and those occurring elsewhere is relevant in determining the required process, *see* Fed.R.Crim.P. 42 (contempts occurring in judge's presence may be summarily punished, but others require notice and hearing), the trial provided to Agajanian satisfied all constitutional and statutory requirements for either type of contempt.

Judgment affirmed.