In the Matter of AN APPLICATION FOR APPOINTMENT OF INDEPENDENT COUNSEL.

No. 84 Civ. 3886.

United States District Court, E.D. New York.

Nov. 6, 1984.

Monroe H. Freedman, Hempstead, N.Y., Orenstein, Snitow & Pauley, P.C., New York City, for applicants.

Asst. Atty. Gen. Stephen A. Trott, Dept. of Justice, Washington, D.C., William C. Bryson, Dept. of Justice, Washington, D.C., Paul J. Larkin, Jr., Dept. of Justice, Washington, D.C., for the government.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

An application was submitted to this Court on behalf of Ronald A. Schiavone and the Schiavone Construction Company (the "Applicants"), requesting the Court to appoint one or more members of the Bar of the Court to serve as independent counsel, to investigate whether Mario Montuoro gave false evidence and made false statements in violation of Federal law and to

prosecute for any violation of Federal criminal law warranted by that investigation. During the course of oral argument, the Government moved for leave to intervene, which was granted.

The application is based upon the following allegations:

Mario Montuoro has a criminal record that includes four arrests, one in 1969 for possession of heroin, and one in 1974 for possession of a gun;

Montuoro has an established relationship with the United States Department of Justice as an informer. For example, in an organized crime case in 1981, Montuoro was a witness on behalf of the prosecution, and the defendant was convicted;

Montuoro's cooperation with the Justice Department might have stemmed from motives of revenge against people about whom he has given information, and, in view of his criminal record, from a desire to ingratiate himself with the prosecutor's office;

In 1979 and thereafter, Montuoro told Federal agents, including members of the Federal Organized Crime Strike Force in Brooklyn, that Raymond J. Donovan and Ronald A. Schiavone, as officers of Schiavone Construction Company, were guilty of participating in an illegal cash payment to a union officer. The payment was said to have been made at a luncheon at Prudenti's Restaurant in May or June of 1977;

In 1981, Raymond J. Donovan became Secretary of Labor of the United States. Later the same year, a division of the United States Court of Appeals for the District of Columbia Circuit appointed Leon Silverman Special Prosecutor, expressly to investigate Montuoro's allegation about the luncheon at Prudenti's;

Under an order of the United States District Court for the Eastern District of New York, issued at the request of the Special Prosecutor, Montuoro testified before a grand jury, and repeated the allegation regarding the luncheon at Prudenti's. The grand jury unanimously returned a no true bill on the allegation;

After an exhaustive investigation of Montuoro's allegation, the Special Prosecutor found that Montuoro's specifications of dates were "inconsistent," that his attempts to relate the luncheon to other events "proved to be illusory," and that there is "no evidence corroborating Montuoro's assertion that any Prudenti's lunch attended by Messrs. Donovan, DiCarolis, Schiavone, Lugori, Sanzo, and Montuoro himself occurred at or near the time he alleged or, for that matter, at any other time examined in the course of this investigation." In short, the Special Prosecutor concluded that "no credible evidence exists that a luncheon as alleged by Montuoro ever occurred;"

Montuoro's conduct, as described in the preceding paragraphs, would justify indictments against him for several federal crimes, including Perjury (18 U.S.C. § 1621), False Declaration Before a Grand Jury (18 U.S.C. § 1623), False Statements (18 U.S.C. § 1001), Obstruction of Justice (18 U.S.C. § 1505), and/or Contempt (18 U.S.C. § 401);

Although formal requests have been made of the Justice Department by Ronald Schiavone that Montuoro be prosecuted, the Department has not sought any indictment of Montuoro. The statute of limitations has now run on Criminal Contempt, but has not yet run on the other crimes.

Affidavits by six persons characterized as highly qualified experts on the professional responsibilities of prosecutors [1] are

---

**1.** David T. Austern was as Federal prosecutor (Chief of Grand Jury/Intake Unit and Chief of Felony Trials), a New York County prosecutor (Rackets Bureau), and the Bar Counsel for the District of Columbia Board on Professional Responsibility. He was himself a court-appointed Special Prosecutor (with Jacob Stein) in the

Investigation of the Appointment of Edwin Meese to be Attorney General.

Barbara Allen Babcock was an Assistant Attorney General of the United States, the Director of the Public Defender Service of the District of Columbia, and a member of the ABA's Criminal Justice Council. She is now a Professor at Stan-

submitted in support of the application. Those persons are unanimous in their conclusion that members of the Department of Justice have a conflict of interest in violation of applicable standards of professional conduct with regard to investigating and prosecuting Mario Montuoro and that this Court should resolve the conflict of interest by appointing independent counsel to investigate and, if warranted, prosecute Montuoro. Federal authority for such an appointment in a case such as this is not furnished in any of those affidavits.

## I.

A variety of arguments are urged upon the Court to move it to grant the requested relief. Only those deemed relevant to the crucial question of the jurisdiction and authority of the Court to grant the application will be considered.

### A. *Inherent Power of the Court*

The Applicants leap from the conflict of interest postulate to the inherent power of the Court to appoint a special prosecutor to resolve the conflict. That inherent power, it is argued, has a long common law tradition, antedating the Constitution. The authority advanced are state cases in many of which the courts are authorized by statute to appoint special prosecutors and others where the state courts have, indeed, asserted power to appoint special prosecutors where the official prosecutor was sick or otherwise disqualified.[2] The concept of "inherent power" is like a ghost that is seen in the law but is elusive to the grasp. In *Smith v. Gallagher*, 408 Pa. 551, 574, 185 A.2d 135, 146 (1962), Justice Musmanno, in responding to the argument that a court had inherent power to convene a special grand jury in a "highly specialized situation," characterized it as follows: "This is an argument which sails a sea glittering with generalities, from which there emerges not a solid rock of jurisprudence on which one can stand and assert a tangible rule, or palpable principle, recognizable in law." Notwithstanding such state authority as there may be for the Application, there is no federal authority, either statutory or judicial, that would support it in a case such as this.

In addition, the Applicants assert that from the earliest days of the common law "an aggrieved party has had the right in England to prosecute criminally, for the vindication of private as well as public wrongs." It should be noted in this regard that in England the prosecution of offenses was left entirely to private persons or to public officers who acted in their capacity of private persons and who had hardly any legal powers beyond those which belonged to private persons. 1 F. Stephen, A Histo-

ford Law School, where she teaches Criminal Procedure and Professional Responsibility.

Samuel Dash was the Chief Counsel for the Senate Watergate Committee, the District Attorney for Philadelphia, a Special Consultant to the Advisory Committee on the ABA Standards Relating to the Defense and Prosecution Functions, and the Chairman of the ABA Section on Criminal Law. He is now a Professor at Georgetown Law School, where he teaches Criminal Law, Criminal Procedure, and Professional Responsibility.

Geoffrey C. Hazard, Jr. was the Reporter and principal draftsman of the ABA Model Rules of Professional Conduct ("Kutak Code"), which was adopted the ABA House of Delegates in 1983. He is now the Director of the American Law Institute, and a Professor at Yale Law School, where he teaches Professional Responsibility.

Norman Lefstein was the Reporter and principal draftsman for the ABA Standards Relating to the Prosecution Function. He is now the Vice Chairman of the ABA Criminal Justice Section, and a Professor at North Carolina Law School, where he teaches Criminal Law, Criminal Procedure, and Professional Responsibility.

James P. Manak was the Director of the National District Attorneys Association Project on Standards and Goals, which produced the NDAA's National Prosecution Standards, and was the Reporter for the Prosecution Volume, Juvenile Justice Standards, ABA/Institute for Judicial Administration. He has also held offices in the National District Attorneys Association, the International Association of Chiefs of Police, and Americans for Effective Law Enforcement, which files amicus briefs before the Supreme Court and other courts on behalf of law enforcement groups.

**2.** *See,* The Special Prosecutor in the Federal System: A Proposal, 11 American Criminal Law Review 577, 579–581 (1973).

ry of the Criminal Law of England, 490–96 (1883). The power to institute prosecutions did not carry with it unlimited control over them when they were instituted. When a charge was made, the maker of it was usually bound over to prosecute and when the bill was sent before the Grand Jury the matter was entirely out of the original prosecutor's hands and must run its course unless the Attorney General, as the representative of the Crown, enters a *nolle prosequi* which operates as a stay of the proceedings. 1 F. Stephen, *supra,* 496. The Attorney General's discretion to enter a *nolle prosequi* was unfettered and never interfered with by the English courts even if in doing so, he abused his power. *Regina v. Allen,* 121 Eng.Rep. 929, 931 (K.B. 1862).[3]

The English practice of private prosecution never took root in American soil. The public prosecution of crime in the United States antedated the independence of the Colonies. The early settlers, dissatisfied with the shortcomings of a system of private prosecution, recognized the necessity of having criminal prosecutions conducted by impartial government officials rather than by interested private parties. See, The Outmoded Concept of Private Prosecution, 25 American University Law Rev. 754, 756–65 (1976); *see also* The Special Prosecutor in the Federal System: A Proposal, 11 American Cr.L.Rev. 577, 604 (1973); Private Prosecution: A Remedy for District Attorneys' Unwarranted Inaction, 65 Yale L.J. 209, 223 (1955); *Linda R.S. v. Richard.,* 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1972) ("[I]n American jurisprudence at least a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another").

### B. *Appointment of Prosecuting Attorneys in Civil Cases*

The Applicants find succor in the civil cases of which *Musidor B.V. v. Great American Screen,* 658 F.2d 60 (2d Cir.

---

**3.** In *Regina v. Allen,* the question before the court was whether the Attorney General has power to enter a *nolle prosequi* on an indictment without calling upon the prosecutor to show cause why that should not be done, and, where he has done so, should the Court interfere. Also before the court was the question of whether the *nolle prosqui* would put an end to the prosecution altogether. The court decided that the Attorney General had the power with which the Court would not interfere and having exercised that power the prosecution was terminated. Chief Judge Cockburn expressed the rule thus:

It is an undoubted power of the Attorney General, as representative of the Crown in matters of criminal judicature, to enter a *nolle prosequi,* and thereby to stay proceedings in any indictment or criminal proceeding. No instance has been cited, and therefore it may be presumed that none can be found, in which after a *nolle prosequi* has been entered by the fiat of the Attorney General, this Court has taken upon itself to award fresh process or has allowed any further proceedings to be taken on the indictment.... Suppose it possible that there could be an abuse of power by the Attorney General, or injustice in the exercise of it, the remedy is by holding him responsible for his acts before the great tribunal of this country, the High Court of Parliament. I have no doubt that the Attorney General has this power; and this Court has never interfered with it.

*Regina v. Allen, supra,* at 931.

Judge Crompton stated the principle as follows:

It would be very mischievous, by granting a rule nisi, to raise any doubt in so clear a matter. In this country, where private individuals are allowed to prefer indictments in the name of the Crown, it is very desirable that there should be some tribunal having authority to say whether it is proper to proceed further in a prosecution. That power is vested by the constitution in the Attorney General and not in this Court.

*Regina v. Allen, supra,* at 931.

Judge Blackburn wrote:

But the power of determining whether the prosecution of an indictment shall go on or not, is entrusted to the Attorney General, who is the great law officer of the Crown; and whether he is right or wrong this Court cannot interfere.

*Regina v. Allen, supra,* at 932.

Finally, Judge Mellor observed:

If we were to interfere in the manner suggested, a serious conflict might arise between the jurisdiction of this Court and the functions of the Attorney General.

*Regina v. Allen, supra,* at 932.

The judges of the Court of Kings Bench might have been writing for American courts more than a century later in cases such as *United States v. Cox, Newman v. United States,* and *Inmates of Attica Correctional Facility v. Rockefeller, infra.*

1981) is a paradigm, in which courts have appointed the attorney for one party to prosecute criminal charges (contempt) against the other party without a finding that the United States Attorney is unable to act. Those cases are clearly distinguishable and the basis for the distinction is readily to be found in a reading of them. In the oft-cited case of *McCann v. New York Stock Exchange*, 80 F.2d 211 (2d Cir.1935), Judge L. Hand had occasion to comment upon some differences between criminal and civil contempt in these terms:

> Criminal prosecutions, that is, those which result in a punishment, vindictive as opposed to remedial, are prosecuted either by the United States or by the court to assert its authority. The first are easily ascertainable; they will be openly prosecuted by the district attorney; it would not seem to be of consequence how they are entitled when that is true. In the second the court may proceed *sua sponte* without the assistance of any attorney, as in the case of disorder in the courtroom; there can be little doubt about the kind of proceeding when that is done. *But the judge may prefer to use the attorney of a party, who will indeed ordinarily be his only means of information when the contempt is not in his presence.* There is no reason why he should not do so, and every reason why he should. (emphasis added).

*Id.* at 214.

Rule 42(b) Fed.R.Cr.P. was intended, in part, to follow the suggestions made in *McCann.* The gloss put upon the language of *McCann* in *Musidor* makes plain the limited circumstance in which the appointment of prosecuting counsel is contemplated. "The practicalities of the situation," said the Court, "where the criminal contempt occurs outside the presence of the court but *in civil litigation* require that the court be permitted to appoint counsel for the opposing party to prosecute the contempt." *Musidor, B.V. v. Great American Screen*, 658 F.2d 60, 65 (2d Cir.1981) (emphasis added).

The other arguments advanced by the Applicants either do not warrant extended discussion or will be noted hereafter.

## II.

During the days of anguish over which the Watergate affair extended, a motion to intervene for the limited purpose of applying for the appointment of a Special Prosecutor was filed in the United States District Court for the District of Columbia. The appointment of a special prosecutor was sought to investigate the events surrounding the notorious Watergate break-in. The novelty of the motion was succinctly noted in the order of Judge Charles R. Richy denying it, as follows: "... there is no statute under our Federal System which authorizes this Court to appoint a special prosecutor. Such statutory authority as exists applies only to the authority of the Attorney General of the United States to appoint 'special attorneys' in the exercise of his discretion. 28 U.S.C. 515, and .... Petitioners have cited no federal case law which directly supports their proposition that this Court has the inherent power to appoint a special prosecutor in this action." Findings of Fact and Order, *O'Brien v. The Finance Committee to Re-Elect the President, et al.,* Civ. No. 1233–72 (D.D.C. Sept. 25, 1972). A motion for similar relief was subsequently filed by John F. Banzhaf III and Peter H. Meyers in *United States v. Liddy,* and similarly denied by Judge John J. Sirica with a terse "there exists no basis upon which petitioner's motion might be granted." *United States v. Liddy,* Crim. No. 1827–72 (D.D.C. November 21, 1972). Although in each case the judge simply found no basis upon which the requested relief could be granted, there were considerable bases upon which the denial of such relief could rest. The variety of reasons advanced for denying such relief will be briefly discussed.

### A. *Absence of Statutory Authority*

It is beyond dispute that there is no federal statute providing for the appoint-

ment of a special prosecutor or independent counsel in a case of this sort.

In 1978 Congress enacted 28 U.S.C. §§ 591–598, known as the Ethics in Government Act. That Act defines with meticulous specificity the circumstances under which a special prosecutor may be appointed by a division of the Court established for that purpose by 28 U.S.C. § 49. The facts prompting this application are not embraced by the Ethics in Government Act which is, therefore, not applicable here. The enactment of that legislation, however, suggests a different view of the inherent power of federal courts than that advanced by the applicant. If the power to appoint special prosecutors were inherent, then it would seem that the Ethics in Government Act was superfluous.

Little, if any, reliance can be placed upon 28 U.S.C. § 547(1) which provides that "each United States Attorney ... *shall* (1) prosecute for all offenses against the United States; ..." (emphasis added). The language of that statute "has never been thought to preclude the exercise of prosecutorial discretion." *Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375 (2d Cir.1973). That case raised the question of whether the federal judiciary should, at the instance of victims, compel federal and state officials to investigate and prosecute persons who allegedly violated federal and state criminal statutes. The question was answered in the negative.

B. *Separation of Powers*

Article II, section 1 of the United States Constitution vests the executive power in the President of the United States who, in section 3, is directed to "take care that the laws be faithfully executed, ..." The Attorney General is the alter-ego of the President in taking care that the laws be faithfully executed. *Ponzi v. Fessenden*, 258 U.S. 254, 262, 42 S.Ct. 309, 311, 66 L.Ed. 607, (1922). Neither the Congress in Article I nor the courts in Article III are directed or empowered to enforce the laws. That fundamental principle of separation of powers has been affirmed in numerous fed-

eral decisions in a variety of contexts. One of the most frequently cited is *United States v. Cox*, 342 F.2d 167 (5th Cir.1965), in which the question presented was whether a United States Attorney could be judicially compelled to sign an indictment returned by a grand jury. At page 171, the court said:

> Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions."

The law in this circuit supports that view, adopting that reasoning in *Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 379 (2d Cir.1973).

In *Newman v. United States*, 382 F.2d 479 (D.C.Cir.1967), the United States Attorney consented to a guilty plea tendered by one co-defendant for a lesser included offense under indictment while refusing to consent to the same plea by the defendant who contended that he was thus denied his constitutional rights of due process and equal protection. Chief Justice (then Circuit Judge) Burger wrote:

> In the United States Attorney's capacity as agent and attorney for the Executive, he is responsible to his principal and the courts have no power over the exercise of his discretion or his motives as they relate to the execution of his duty within the framework of his professional employment.... It is assumed that the United States Attorney will perform his duties and exercise his powers consistent with his oath; and while this discretion is subject to abuse or misuse just as is judicial discretion, deviations from his duty as an agent of the Executive are to be dealt with by his superiors.

The remedy lies ultimately within the establishment where power and discretion reside. The President has abudant supervisory and disciplinary powers—including summary dismissal—to deal with misconduct of his subordinates; it is not the function of the judiciary to review the exercise of executive discretion whether it be that of the President himself or those to whom he has delegated certain of his powers.

The concurring opinion would reserve judicial power to review 'irrational' decisions of the prosecutor. We do our assigned task of appellate review best if we stay within our own limits, recognizing that we are neither omnipotent so as to have our mandates run without limit, nor omniscient so as to be able to direct all branches of government. The Constitution places on the Executive the duty to see that the 'laws are faithfully executed' and the responsibility must reside with that power.

*Newman v. United States, supra,* at 481, 482 n. 9.

### C. *Prosecutorial Discretion*

... federal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the instance of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made.

\*       \*       \*       \*       \*       \*

This judicial reluctance to direct federal prosecutions at the instance of a private party asserting the failure of United States officials to prosecute alleged criminal violations has been applied even in cases ... where, ... serious questions are raised as to the protection of the civil rights and physical security of a definable class of victims of crime and as to the fair administration of the justice system.

*Inmates of Attica Correctional Facility v. Rockefeller,* 477 F.2d 375, 379 (2d Cir. 1973). The court went on to consider at 380–381 the manifold imponderables which enter into the prosecutor's decision to prosecute or not to prosecute and concluded that "On balance, we believe that the substitution of a court's decision to compel prosecution for the United States Attorney's decision not to prosecute, even upon an abuse of discretion standard of review and even if limited to directing that a prosecution be undertaken in good faith, ... would be unwise." *See also, Pugach v. Klein,* 193 F.Supp. 630, 635 (S.D.N.Y.1961).

The Applicants would distinguish the cases in which a federal court was petitioned to coerce the prosecutor to institute an investigation or to pursue a criminal prosecution. They argue that they are not seeking such relief. They merely ask that the United States Attorney be supplanted by the appointment of an independent counsel who, in this case, "would be an aid to the public prosecutors in 'carrying out their responsibilities, because it would relieve them of an undesirable and unseemly conflict of interest.' "[4] That argument is not persuasive.

In *Nathan v. Smith,* 737 F.2d 1069 (D.C. Cir.1984), the District Court granted plaintiff's motion for summary judgment in a mandamus action and ordered the Attorney General to conduct a preliminary investigation pursuant to 28 U.S.C. § 592 of the Ethics in Government Act. The Attorney General sought reversal of the court's order and the plaintiff cross-appealed from the court's refusal to direct the Attorney

---

**4.** *See,* Memorandum of Points and Authorities in Support of Application for Appointment of Independent Counsel, p. 19.

The principal reason advanced in support of this application, buttressed by the affidavits of qualified commentators on professional responsibility, is the conflict of interest which allegedly infects the relationship between the United States Attorney and the informant, Mario Montuoro. In paragraph numbered 12 of the Application for Appointment of Independent Counsel, the court is asked to consider the appointment of the attorneys representing Ronald A. Schiavone and the Schiavone Construction Company in this proceeding. I am puzzled by the absence of conflict of interest a request to consider their appointment clearly implies. *See, e.g.,* The Outmoded Concept of Private Prosecution, 25 American U.L.R. 754, 768, *et seq.* (1976). *See also* page 29 of the transcript.

General to apply for the appointment of a special prosecutor (now independent counsel). The order of the District Court was reversed. The concurring opinion by Judge Bork is relevant and instructive. He wrote, at 737 F.2d 1079 as follows:

> It may be thought that neither the relief granted by the district court nor that sought by the plaintiffs falls within the principle of Executive control of decisions to prosecute. The district court ordered the Attorney General to initiate a preliminary investigation; the plaintiffs seek to compel an application for the appointment of an independent counsel. The distinction between these remedies and the principle [of Executive control of decisions to prosecute] has no significance, however.... The preliminary investigation is thus the first stage of the prosecutorial process and the district court has undertaken to control that stage.

> Plaintiffs would have the district court control the next stage as well ordering the Attorney General to apply to the special division of the court for the appointment of an independent counsel. It is no answer to say that the courts, under either form of relief, would not control the final prosecutorial decision since that would be made by the independent counsel. There are at least two flaws in that reasoning. The first is that the principle of Executive control extends to all phases of the prosecutorial process.

Thus, were this a case about an ordinary prosecution under a federal criminal statute, a plaintiff could not escape the principle discussed by demanding only an order that the Attorney General present facts to a grand jury but leaving the decision whether to sign an indictment to him. Second, if private plaintiffs have the legal ability to require an investigation of criminal charges, it is difficult to understand by what principle they could be denied a cause of action to compel the independent counsel to prosecute if that counsel had sufficient evidence to do so under the policies of the Department of Justice, which the Act requires him to follow.... If the execution of the laws is lodged by the Constitution in the President, that execution may not be divided up into segments, some of which courts may control and some of which the President's delegate may control.

Given the views expressed regarding the merits of this application, no useful purpose would be served by burdening this decision further with a consideration of the issue of standing. *See e.g., Linda R.S. v. Richard D*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1972); *Dohaish v. Tooley*, 670 F.2d 934 (10th Cir.1982); *Pugach v. Klein*, 193 F.Supp. 630, 635 (S.D.N.Y.1961).

For the foregoing reasons, the Application for the appointment of independent counsel is denied.[5]

SO ORDERED.

**5.** By letter dated October 31, 1984 and received by the Court on November 2, 1984 (argument on the application was heard on October 26, 1984), Applicants' counsel claims surprise by the suggestion of the Governments attorney upon oral argument that the factual premise of the application was being challenged. Relying upon his understanding of the Government's oral presentation, he writes: "Apparently, Mr. Larkin's contention is in two parts: first, that the Special Prosecutor did not determine that Mario Montuoro had committed perjury; second, that even if the Special Prosecutor determined that Montuoro had committed perjury, the Special Prosecutor decided, on the merits, that prosecution was nevertheless unwarranted....

"One might suggest a number of explanations for the fact that Mr. Silverman made no referral to the Department of Justice, but speculation would be inappropriate and is unnecessary. At the hearing Mr. Larkin was granted leave to supplement the record, belatedly, in this regard. We respectfully submit that fairness requires that Applicant be granted a similar right.

"Applicant then requests leave of the court to supplement the record by a brief deposition of Mr. Silverman, an affidavit from him, or simply by a letter from him to the Court, responding to the following questions:

"1. Whether he concluded that Mario Montuoro made false statements to Federal Agents and/or committed perjury before the Grand Jury with respect to the President's allegations?

"2. If so, why he refrained from referring the evidence of Montuoro's false statements and/or perjury to the Department of Justice?"

At the conclusion of oral argument, the Attorney for the Government offered to furnish the

Court and counsel with page 294 of Vol. 1 of the Report of the Special Prosecutor. To date, that page has not been furnished and the record has not been supplemented by the Government. In any event, in the light of the reasons advanced for the denial of the application, I fail to see the relevance of Mr. Silverman's responses to the proposed questions. They would not affect the principle of separation of powers, prosecutorial discretion nor cure the absence of statutory or judicial authority for the relief requested. The belated request by the Applicant for leave to supplement the record by a limited inquiry of Leon Silverman, Esq., is denied.

I express no view as to whether independent counsel could himself have initiated and conducted the prosecution of Montuoro for perjury, assuming such action was warranted. *See, e.g.,* 28 U.S.C. §§ 593(b), 594(a)(9)(e), (f); 1978 U.S. Code Cong. & Ad.News 4216, 4280–4286; 1982 U.S.Code Cong. & Ad.News 3537, 3538, 3545, 3550–3553. If the independent counsel could have initiated and conducted such a prosecution, then the cases discussed pertaining to prosecutorial discretion and separation of powers are clearly dispositive.