**In the Matter of an Application for AP-POINTMENT OF INDEPENDENT COUNSEL.**

**Ronald A. SCHIAVONE and the Schiavone Construction Company, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 1066 Docket 84–6362.**

United States Court of Appeals, Second Circuit.

Argued April 11, 1985.

Decided June 24, 1985.

Monroe H. Freedman, Hempstead, N.Y. (Orenstein & Orenstein, P.C., New York City, of counsel), for appellants.

Patty Merkamp Stemler, Dept. of Justice, Washington, D.C. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., Stephen S. Trott, Asst. Atty. Gen., New York City, of counsel), for appellee.

Before VAN GRAAFEILAND, CARDAMONE and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge.

The issue we address in this case is whether appellants have standing under Article III of the Constitution to invoke the power of the federal courts. If they do not, we need go no further. Analyzing Article III standing in a given case is not always easy. The Supreme Court decisions in this area do not mesh with nice consistency, and the concept cannot be stated in a neat epigram. *See Valley Forge Christian College v. Americans United,* 454 U.S. 464, 475,102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982). Yet, standing is far from being like Milton's Serbonian bog "[w]here armies whole have sunk;"[1] nor is it even so inordinately complex as some commentators view it. *See, e.g.,* 4 K. Davis, *Administrative Law Treatise* § 24:1 (2d ed. 1983).

Hence, a court confronted with a standing issue should decide it.

Ronald A. Schiavone and the Schiavone Construction Company applied to the United States District Court for the Eastern District of New York (Glasser, J.) for appointment of independent counsel to investigate whether one Mario Montuoro had given false evidence before a grand jury and, if so, to prosecute for any violation of federal criminal law warranted by that finding. The district court denied the application holding that the court has no constitutional or statutory authority to make an appointment of counsel. 596 F.Supp. 1465 (E.D.N.Y.1984). On appeal, the government, which has opposed the application throughout the proceeding, urges affirmance of the district court decision or, in the alternative, dismissal of the application because appellants lack standing to seek such appointment. For the reasons stated below, we vacate the district court's order and dismiss the proceeding.

I   BACKGROUND

On September 20, 1984 an application for appointment of independent counsel was filed on behalf of appellants Ronald A. Schiavone and the Schiavone Construction Company. The allegations contained in the application, reproduced in 596 F.Supp. at 1466, may be summarized briefly. The applicants alleged that Mario Montuoro has a criminal record and has acted as an informer for the United States Department of Justice. Montuoro told federal agents that Ronald A. Schiavone and Raymond J. Donovan, as officers of Schiavone Construction Company, had made an illegal payment to a union officer at a luncheon in 1979. In 1981 Donovan was appointed as United States Secretary of Labor. Shortly afterwards the United States Court of Appeals for the District of Columbia appointed a Special Prosecutor to investigate Montuoro's allegations. Pursuant to an order of the Eastern District Court, issued at the

---

**1.** J. Milton, *Paradise Lost,* in 4 Harvard Classics, *The Complete Poems of John Milton* 125 (Eliot ed. 1909).

behest of the Special Prosecutor, Montuoro testified before a grand jury and repeated the allegations regarding the luncheon. The grand jury unanimously refused to indict either Schiavone or Donovan on Montuoro's allegations. The Special Prosecutor concluded that "no credible evidence exist[ed] that a luncheon as alleged by Montuoro ever occurred."

Schiavone claimed that Montuoro's conduct warranted criminal prosecution for perjury, 18 U.S.C. § 1621, false declaration before a grand jury, 18 U.S.C. § 1623, false statements, 18 U.S.C. § 1001, obstruction of justice, 18 U.S.C. § 1505, and contempt, 18 U.S.C. § 401. Schiavone further stated that the government has not sought to indict Montuoro on any of these charges. With his application to the district court, he submitted affidavits by six experts in the field of professional responsibility, all of whom were of the opinion that the Department of Justice violated applicable standards of professional conduct by failing to prosecute Montuoro for his false testimony because of a conflict of interest. *See* 596 F.Supp. at 1466–67 & n. 1. Schiavone asked the district court to appoint independent counsel to investigate and, if warranted, prosecute Montuoro.

The district court denied the application on its merits. The court held that it had no inherent or statutory authority to appoint an independent prosecutor, and that there was no precedent in the history of the common law for such an appointment. It concluded that the constitutional principle of separation of powers between the executive and the judicial branches, together with the broad discretion vested in the prosecutor, precluded the court from interfering with the prosecutorial function. At the end of its opinion the district court noted the government's assertion that Schiavone lacked standing to submit his application, but declined to rule on that issue. 596 F.Supp. at 1472. Without reaching or considering the correctness of the district court's substantive conclusions, we hold that the applicants do not meet the threshold requirements of standing.

## II  Discussion

### A.  *General Rules Governing Standing*

The framers of the Constitution drawing on history's examples urged that the preservation of liberty depended on keeping the "three great departments of power ... separate and distinct." *The Federalist* No. 47, at 313 (J. Madison) (Sesquicentennial ed. 1937). The separation of powers is the bedrock theory upon which our federal government rests. With respect to the federal judiciary, this concept is embodied in section 2 of Article III of the Constitution, which states that the "judicial Power" of the federal courts "shall extend to" certain described "Cases" and "Controversies."

A legal device crafted in decisional law to implement the case-or-controversy requirement is the doctrine of standing, which places limits on a plaintiff's ability to invoke the power of the federal courts. *See, e.g., Allen v. Wright,* —— U.S. ——, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Standing asks whether a particular litigant is entitled to invoke the power of the federal court. "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). Since the standing requirement is derived from Article III limitations on the federal courts' powers, it is the threshold issue in every case. To demonstrate standing a plaintiff must establish first that he has suffered some "distinct and palpable injury," *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) (quoting *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206), which may be actual or threatened, economic or noneconomic. *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Second, the injury must be the result of the "putatively illegal conduct of the defendant." *Gladstone,* 441 U.S. at 99, 99 S.Ct. at 1607. In other words, plaintiff must show that the injury "fairly can be traced to the challenged ac-

tion." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976). Nor may the causation between the illegal conduct and the injury be too attenuated. *Wright*, 104 S.Ct. at 3325. Finally, it must be likely that plaintiff's injury will be redressed by a favorable court decision. *Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758; *Simon*, 426 U.S. at 38, 96 S.Ct. at 1924.

The Supreme Court consistently has stated that the essence of the question of standing is whether plaintiff has "demonstrate[d] a 'personal stake in the outcome' [of the controversy] in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). But standing "is not measured by the intensity of the litigant's interest," *see Valley Forge*, 454 U.S. at 486, 102 S.Ct. at 766, and "concrete adverseness" is not intended to substitute for the requirement that a plaintiff show that he personally suffered actual or threatened injury as a result of defendant's conduct. *Id.* Instead, that phrase simply reflects the helpful consequences that follow after a plaintiff has met Article III's rigorous actual case-or-controversy requirements. C. Wright, *Law of Federal Courts* § 13, at 70 (4th ed. 1983).

■ In addition to the Article III standing requirements, there are judge-made, prudential limitations on the exercise by a federal court of judicial power. *See, e.g., Wright*, 104 S.Ct. at 3324–25; *Valley Forge*, 454 U.S. at 474–75, 102 S.Ct. at 759–60. These judicially self-imposed limits prevent a litigant from resting his claim to relief on the legal rights of some third party, and bar adjudication of abstract questions that, although perhaps of wide public significance, really amount to no more than generalized grievances. *Id.* They also require plaintiff's complaint to

fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations*, 397 U.S. at 153, 90 S.Ct. at 830.

### B. *Supreme Court Precedents*

With the Article III requirements and prudential limitations in mind, we consider several Supreme Court cases that have applied these factors in the same area of the law as that now under consideration. The appellant in *Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), was the mother of an illegitimage child who brought an action on behalf of herself, her child, and others similarly situated to enjoin the "discriminatory application" of Art. 602 of the Texas Penal Code. Article 602 made it a misdemeanor for a parent to "wilfully desert, neglect or refuse to provide for the support and maintenance of his or her child or children under eighteen years of age." *Id.* at 615, 93 S.Ct. at 1147. Appellant alleged that the father of her illegitimate child had refused to provide support for the child and that the local district attorney would not prosecute because, in his view, the fathers of illegitimate children were not within Art. 602's scope. Appellant sought both a declaratory judgment that this provision of the Texas Penal Code was unconstitutional and an injunction to prohibit the district attorney from declining to prosecute the father on the ground that the unsupported child is illegitimate. *Id.* at 616, 93 S.Ct. at 1148.

The district court dismissed the mother's case for lack of standing and the Supreme Court affirmed. The Court held that appellant "failed to allege a sufficient nexus between her injury and the government action which she attack[ed] to justify judicial intervention." *Id.* at 617–18, 93 S.Ct. at 1148–49. Acknowledging that the mother of the child had in fact suffered injury as a result of the father's neglect, it found that the mother had not shown a connection between her failure to obtain support for the child and the nonenforcement of

Art. 602. The Court concluded: "Thus, if appellant were granted the requested relief, it would result only in the jailing of the child's father. The prospect that prosecution will, at least in the future, result in payment of support can, at best, be termed only speculative." *Id.* at 618, 93 S.Ct. at 1149. The Supreme Court further observed: "prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.... [I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.* at 619, 93 S.Ct. at 1149.

In *Leeke v. Timmerman,* 454 U.S. 83, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981), the Court held that prison inmates who claimed that they had been beaten by guards had no standing to prevent state officials from submitting information to the magistrate to assist him in deciding whether to issue warrants for the guards' arrest. *Id.* at 87, 102 S.Ct. at 71. The Court ruled that there was a "questionable nexus" between the inmates' injuries and the actions of the state officials. *Id.* at 86, 102 S.Ct. at 70. First, there was no assurance that the issuance of warrants would have led to the prosecution of the guards and, even if it had, there was no guarantee that prosecution would have remedied the plaintiffs' injuries. Thus, such issuance would not necessarily have provided plaintiffs any relief. *Id.* at 86–87, 102 S.Ct. at 70–71. *Cf. Heckler v. Chaney,* —— U.S. ——, 105 S.Ct. 1649, 1656, 84 L.Ed.2d 714 (1985) (agency decision not to take enforcement actions requested by individuals not subject to review under the Administrative Procedure Act, analogizing an agency's decision to enforce with the prosecutor's decision to indict).

### C. *Standing Requirements Applied to This Case*

■ We note that on appeal the government properly raised the standing issue, even though the district court declined to

rule on the issue and the government did not cross-appeal. First, as standing derives from Article III's limitation on federal judicial power, it is a threshold issue in every case. *Warth,* 422 U.S. at 498, 95 S.Ct. at 2204. Before a trial or appellate court rules on any claim, it must have power to adjudicate that claim. Only if a proper party invokes the court's power will it be entitled to relief. *See Village of Arlington Heights v. Metropolitan Development Housing Corp.,* 429 U.S. 252, 260, 97 S.Ct. 555, 560, 50 L.Ed.2d 450 (1977). Second, the district court did not decide adversely to the government on the standing issue; it simply left the question open. Inasmuch as the government's position on appeal supports the district court judgment, it may urge the standing argument without taking a cross-appeal. *Dandridge v. Williams,* 397 U.S. 471, 475–76 n. 6, 90 S.Ct. 1153, 1156–57, n. 6, 25 L.Ed.2d 491 (1970); *United States v. American Railway Express,* 265 U.S. 425, 435–36, 44 S.Ct. 560, 563–64, 68 L.Ed. 1087 (1924). Thus, the question of Schiavone's standing to invoke the power of the federal court is properly before us.

■ We turn to analyze the circumstances of this case. In so doing we recognize that when ruling on a motion to dismiss for want of standing, we must accept all material allegations of the application as true. *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206. We also recognize that, when ruling on standing, a court must examine the substantive issues to discover whether there is a nexus between the alleged injury and the claim sought to be adjudicated in a federal court. *See Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). But when a plaintiff lacks standing the court must dismiss the case on that ground, and it is unnecessary to intimate a view as to the merits of the claim. *Linda R.S.,* 410 U.S. at 619 n. 6, 93 S.Ct. at 1149 n. 6.

■ Applying the standing tests and the Supreme Court's ruling in *Linda R.S.* it is evident that applicants lack standing. Concededly, applicants have suffered an injury stemming from Montuoro's state-

ments to federal officers and the grand jury. Public allegations that construction company officers made an improper payment to a union officer are damaging to the reputation of the company and the individuals involved, both within the industry and the community. Yet, even granting counsel's argument that the individual applicant and the company suffered serious reputational and economic injury, applicants have failed to demonstrate that their injuries are traceable to the government's failure to prosecute. Any injury they suffered was a result of Montuoro's actions and the perception of the public; none was caused by the government's inaction.

Further, were the court to grant the relief requested, such relief would not redress the applicants' injuries. Even *if* independent counsel were to investigate Montuoro, and *if* prosecution were warranted, and *if* Montuoro were convicted, to say that the prospect of applicants obtaining relief from such prosecution is speculative is surely an understatement. Successful prosecution would only result in the jailing of Montuoro, not in financial recompense for Schiavone. *See Linda R.S.,* 410 U.S. at 618, 93 S.Ct. at 1149. What applicants actually seek is public vindication for a private wrong. And, as mentioned earlier, the Supreme Court has clearly stated: "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.* at 619, 93 S.Ct. at 1149. Thus, although applicants have satisfied the first standing requirement by demonstrating an injury, that injury is not traceable to the government's failure to prosecute Montuoro, and a favorable decision on the application will not redress the injury.

### D. *Prudential Limitations Applied to This Case*

Appellants further contend that they satisfy the "zone of interests" test enunciated by the Supreme Court in *Association of Data Processing Service Organizations,* 397 U.S. at 158, 90 S.Ct. at 832 (data processing organizations permitted to challenge Comptroller of the Currency's ruling that allowed national banks to provide data processing services). A plaintiff derives "zone of interests" standing from a statute. Hence, the applicants claim that they have suffered some "injury in fact" and that they are "arguably within the zone of interests" protected by the statutes that forbid perjury and related conduct. Although this argument has a plausible ring, it need not detain us long.

■■■■■ Appellants failed to prove the most critical aspect of the standing requirement: that there is some reasonable nexus between their injury and the challenged action, or in this case, the challenged inaction. It is well-settled that the bare existence of an abstract injury is not enough to confer standing. *See Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). The zone of interests test is a judicially created prudential limitation on federal court power. The test is another hurdle for plaintiffs *after* they have satisfied the case-or-controversy requirements; it is not a substitute for the standing requirements of Article III. As noted, appellants have failed to satisfy the constitutional standing requirements. Thus, they are not entitled to invoke the power of the federal court, regardless of whether they satisfy the zone of interests test.

■■■■ Finally, applicants claim that they are permitted to submit an application for independent counsel in order to vindicate the public interest in the fair administration of justice. But they have not alleged any particularized injury with respect to this goal. Rather, whatever injury they suffered in this context is one shared by society at large. The doctrine of separation of powers precludes an individual from invoking the power of a court to compel the government to act on behalf of all members of society to vindicate the administration of justice. *See Wright,* 104 S.Ct. at 3328, and cases cited.

### III CONCLUSION

We therefore conclude that applicants lack standing to submit their application for the appointment of independent counsel. The district court's order is vacated and the application dismissed.