ROBERT M. PARKER, Circuit Judge:
The Defendant-Petitioner, Len Davis (“Davis”), has filed a motion for clarification of this Court’s previous writ of manda *380 mus, or, alternatively, for the issuance of a second writ of mandamus overturning the district court’s decision to appoint an independent counsel to represent the public interest in the penalty phase proceeding of this capital case. For the following reasons, we issue the writ.
I. FACTS AND PROCEDURAL HISTORY
Davis was convicted of civil rights murder in violation of 18 U.S.C. §§ 241 and 242, and sentenced to death. On appeal, we upheld the conviction but reversed the death sentence and remanded for a new penalty trial. United States v. Causey, 185 F.3d 407 (5th Cir.1999). Upon remand, the district court appointed counsel to represent Davis. Davis announced to the court that he desired to represent himself during the penalty trial. He also took the position that he does not want to present traditional mitigating evidence during the penalty trial, but will focus instead on attacking the strength of the government’s case as to guilt.
After holding a hearing pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the district court found that Davis’s decision to represent himself was made knowingly and intelligently. However, the district court concluded that the Faretta right to self-representation does not extend to criminal sentencing, and even if it does, Davis’s interests are outweighed by the Eighth Amendment requirement that the death penalty not be imposed arbitrarily and capriciously. Thus, the district court precluded Davis from representing himself and ordered standby counsel to assume full representation and prepare a full penalty phase defense. Davis sought a writ of mandamus in this Court compelling the district court to permit self-representation instead.
On July 17, 2001, this Court issued a writ of mandamus directing the district court to allow Davis to represent himself in the penalty phase of this capital case. We determined that Mr. Davis has a Sixth Amendment right to represent himself during the penalty trial as specified by the United States Supreme Court in Faretta, but we gave the district court the authority to appoint standby counsel. The case was then remanded back to the district court.
On August 30, 2001, the district court issued an order appointing Laurie White to serve as an independent counsel at the penalty phase of this case. According to the order, the independent counsel is to represent the “interest of the public” in having a full and fair penalty phase proceeding. This means that the independent counsel will present traditional mitigating factors in favor of Davis to the jury at the penalty trial.
On October 9, 2001, Davis moved the Court to clarify the July 17, 2001 mandamus order, or alternatively, to issue a second writ of mandamus to the district court overturning the appointment of an independent counsel. In the motion, Petitioner contends that the district court’s appointment of an independent counsel “completely eviscerates his Faretta right to represent himself pro se.” We agree. Therefore, we issue this second writ of mandamus.
II. DISCUSSION

A. The DistHct Court’s Rationale

In its Order and Reasons, the district court decided that the appointment of an independent counsel does not conflict with Davis’s right to represent himself because Davis would still be allowed to present any evidence he desires. The district court stated that it would allow “Davis full rein in his penalty phase. He may voir dire *381 jurors, make opening statements, question witnesses, call witnesses, introduce evidence, make objections and present a closing argument, all he desires to do or not do, within the appropriate procedural and evidentiary rules.” However, the court found that allowing Davis “full rein” did not mean that he could silence “other potential voices in the courtroom” from presenting evidence they deemed to be helpful to the jury.
The district court justified its determination that Davis’s Faretta rights are not undermined by the appointment of an independent counsel by opining that both the government and the trial judge play a role in the penalty trial that is similar to the role an independent counsel could play. The district court noted that (1) the government has an obligation to produce mitigating as well as exculpatory evidence to the fact finder if that serves the ends of justice; and (2) the trial judge may interpose questions to witnesses to elicit evidence that might otherwise not be presented. The district court reasoned that:
An independent counsel, clearly identified as not associated with Davis, could likewise present evidence and question witnesses, providing relevant information helpful to the jury’s decision. Just as the government’s obligation to disclose mitigation evidence and the Court’s prerogative to question witnesses do not interfere with Davis’s Far-etta right, neither would the participation of this independent counsel.

B. The Sixth Amendment Violation

We find that the district court’s decision to appoint an independent counsel violates Davis’s Sixth Amendment right to self-representation. An individual’s constitutional right to represent himself is one of great weight and considerable importance in our criminal justice system. This right certainly outweighs an individual judge’s limited discretion to appoint amicus counsel when that appointment will yield a presentation to the jury that directly contradicts the approach undertaken by the defendant.[1]

1. Proper Role of the Trial Court

At the outset, we note that the district court has misconstrued its proper role in conducting the penalty trial by overstating the parameters within which a judge can question witnesses. Rule 614(b) of the Federal Rules of Evidence permits judges to question witnesses. A trial judge’s questioning of witnesses is permissible if aimed at clarifying the evidence or managing the trial. United States v. Williams, 809 F.2d 1072, 1087 (5th Cir.1987).
A judge’s questioning, however, should never evince or appear to evince partiality to one side over the other. See U.S. v. Reyes, 227 F.3d 263, 265 (5th Cir.2000) (“[t]he primary limitation on this judicial investigatory power is that it must be undertaken for the purposes of benefit-ting the jury in its understanding of the evidence, and the court may not appear to be partial”); U.S. v. Martin, 189 F.3d 547, 553 (7th Cir.1999)(“a judge’s discretion to question witnesses is not unfettered. A judge cannot assume the role of an advo *382 cate for either side.”); United States v. Tilghman, 134 F.3d 414, 416 (D.C.Cir.1998)(noting that trial judges must strive to preserve an appearance of impartiality and must err on the side of abstention from intervention). For example, a judge should not ask questions which indicate his belief or disbelief of witnesses. United States v. Wyatt, 442 F.2d 858, 859-61 (D.C.Cir.1971).
In our July 17, 2001 opinion, we noted that the district court may interpose questions to witnesses during the penalty trial. The district court construed this statement as an invitation “to elicit evidence that might otherwise not be presented.” The district court further implied that it has the right to elicit evidence from witnesses in a manner similar to that of an independent counsel.
We disagree with the district court’s understanding of our previous statement. The district court shall not interpose questions to witnesses during the penalty trial which demonstrate partiality to one side or one position. The district court’s role in the penalty trial shall be one of judge, not advocate.

2. Absence of Statutory Authority or Case Law Authority.

The district court provides no federal statutory authority for appointing an independent counsel to present mitigation evidence in the penalty phase of a capital case. Instead, the district court relied upon civil cases in which federal courts permitted amicus curiae to assist in the proceedings. We closely scrutinized the “amicus curiae” cases. None are remotely analogous to the situation in the instant case. Therefore, we deem these cases to be of limited precedential value.
In the reverse but analogous scenario, the federal courts have also addressed whether district judges have the power to appoint special prosecutors when the government elects not to prosecute. In Nathan v. Smith, 737 F.2d 1069 (D.C.Cir.1984), the D.C. Circuit considered whether a district court had the authority to order the Attorney General of the United States to conduct, a preliminary investigation pursuant to 28 U.S.C. § 592 of the Ethics in Government Act. The only purpose of the preliminary investigation was to enable a report to be made to the court concerning the need or lack thereof for the appointment of an independent counsel. The D.C. Circuit reversed the district court order which started the special prosecutor appointment process. Id.
In the Matter of An Application for Appointment of Independent Counsel, 596 F.Supp. 1465 (E.D.N.Y.1984), the district court determined that it had no authority to appoint independent counsel to prosecute a government informer for giving false evidence and false statements. In Application, the Department of Justice had declined to indict the government informer. The applicants, however, argued that the court had the inherent power to appoint a special prosecutor. Judge Glas-ser rejected this contention for several reasons.
First, Judge Glasser noted that the judges in the Watergate cases of O’Brien v. The Finance Committee to Re-Elect the President, et al., Civ. No. 1233-72 (D.D.C. Sept. 25,1972) and United States v. Liddy, Crim. No. 1827-72 (D.D.C. November 21, 1972) found no basis for the judicial appointment of special prosecutors. Id. at 1469. Second, he determined that no federal statute provided for judicial appointment of a special prosecutor or independent counsel under the circumstances of the case. Id. at 1470. Third, he expounded upon the separation of powers problems *383 that would arise from judicial appointment of special prosecutors.[2] Id. at 1470-71.
In this Circuit, we have not specifically addressed the judiciary’s alleged inherent power to appoint special prosecutors.[3] However, in United States v. Cox, 342 F.2d 167, 172 (5th Cir.1965), cert. denied, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965) (per curiam), we held that a district court lacked the power to require the United States Attorney to sign indictments, and thereby dispelled the notion that the district court had the power to compel the executive branch to initiate prosecution.[4]
We grounded the Cox holding on separation of powers concerns. Id. at 171 (“It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions.”). In our view, allowing federal judges to appoint special prosecutors when the government elects not to prosecute would contravene the Cox holding. Therefore, we find it highly unlikely that this Circuit would allow such appointments.
As we have previously stated, the special prosecutor cases are not directly analogous to the instant case, but they remain instructive. In both instances, the district court judge based the decision to appoint a special prosecutor or independent counsel on an alleged inherent judicial power, not statutory authority. There is little distinction between special prosecutors and special (independent) counsel appointed to present evidence calculated to aid the defense. Therefore, the exacting appellate scrutiny applied to judicial appointment of special prosecutors must also be applied to the instant case.
The judiciary’s alleged “inherent power” to appoint special prosecutors clashes with Article II, section 3 of the United States Constitution.[5] ’ Similarly, the district court’s alleged inherent authority to appoint independent counsel clashes with the petitioner’s Sixth Amendment Faretta rights. In both situations, the Constitution prevails over any “inherent judicial power” argument.

*384
5. The Strength and Nature of the Self-Representation Right

The district court’s analysis also misses the mark because it fails to take into consideration the strength and nature of the right of self-representation. In Faretta, the Supreme Court expounded upon the history at the time of the passage of the Sixth Amendment which underpinned its decision to imply from the text the right of self-representation. The Supreme Court explained that all historical evidence led to the conclusion that the right of self-representation was at the very heart of the Sixth Amendment. Faretta, 422 U.S. at 832, 95 S.Ct. 2525. Indeed, the Framers “always conceived of the right to counsel as an ‘assistance’ for the accused, to be used at his option, in defending himself.” Id.
The district judge appointed the independent counsel because she wants the jury to have a complete picture of all possible traditional mitigating factors. In her view, society’s interest in a full and fair capital sentencing proceeding can only be served if all possible aggravating and mitigating factors are presented to the jury. While this notion is certainly noble, it cannot be squared with Davis’s self-representation right. Faretta teaches us that the right to self-representation is a personal right. It cannot be impinged upon merely because society, or a judge, may have a difference of opinion with the accused as to what type of evidence, if any, should be presented in a penalty trial.
“The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of ‘that respect for the individual which is the lifeblood of the law.’ ” Id. at 834, 95 S.Ct. 2525 (quoting Illinois v. Allen, 397 U.S. 337, 350-51, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)).
Davis has indicated that he intends to employ an admittedly risky strategy during the penalty phase. Instead of presenting traditional mitigating evidence, he intends to attack the strength of the government’s case as to his guilt.[6] This is a specific tactical decision.[7] Davis has *385 made it quite clear that he does not want any traditional mitigating evidence to be presented on his behalf. Nevertheless, the district court has appointed the independent counsel specifically for the purpose of presenting a full penalty phase defense which will utilize traditional mitigating factors. As such, Davis’s strategy is in direct conflict with the independent counsel’s approach. Because Davis’s right to self-representation encompasses the right to direct trial strategy, the district court’s decision to impose an independent counsel into these proceedings is overturned.[8]
III. CONCLUSION
The core of a defendant’s right to pro se representation is his ability to preserve actual control over the case he chooses to present to the jury. McKaskle v. Wiggins, 465 U.S. 168, 178, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). This is so regardless of whether society would benefit from having a different presentation of the evidence. Because Davis will be stripped of his right to preserve actual control over his penalty trial defense if the appointment of the independent counsel is allowed to stand, we conclude that Davis has a clear and indisputable right to mandamus relief and no adequate alternative to mandamus exists. In re: American Airlines, Inc., 972 F.2d 605, 608 (5th Cir.1992), cert. denied sub. nom. Northwest Airlines, Inc. v. American Airlines, Inc., 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). We therefore grant the petition.
We reiterate that the district court may appoint standby counsel for Davis if appropriate. However, during the penalty trial, the district court shall not allow standby counsel to interfere with Davis’s self-representation right. Any attempt by standby counsel to present traditional mitigating evidence (against the wishes of Davis) would also violate Davis’s Faretta right and this writ. See Myers v. Johnson, 76 F.3d 1330, 1334 (5th Cir.1996)(quoting from McKaskle v. Wiggins, 465 U.S. at 178) (“If standby counsel’s participation over the defendant’s objection effectively allows counsel to make or substantially interfere with any significant tactical decision ... the Faretta right is eroded.”).
Petition GRANTED, writ ISSUED, and action REMANDED for a sentencing proceeding without the assistance of the appointed independent counsel.

. The district court envisions that the conflict between the independent counsel's presentation and Davis’s trial strategy will be ameliorated by instructing the jury that the independent counsel does not represent Davis, but rather her participation is required “by law." In our view, this instruction actually compounds the problem as it gives the independent counsel's presentation an aura of superiority over whatever is presented by the prosecution and the defense.

. Judge Glasser's memorandum opinion and order were later vacated because the Second Circuit determined that the applicants did not have standing to apply for appointment of independent counsel. See Appointment of Independent Counsel, 766 F.2d 70, 77 (2nd Cir.1985). Nevertheless, the rationale in the district court’s opinion is persuasive.

. In United States v. Cowan, 524 F.2d 504 (5th Cir.1975), we considered a case in which a federal district court judge refused to grant an agreed dismissal of a prosecution and appointed private special prosecutors to continue prosecution of the action. As in the case at bar, the district judge justified his decision to appoint special prosecutors on the judiciary’s inherent power to protect the public interest. Id. at 507. Because we determined that the district judge abused his discretion under Federal Rule of Criminal Procedure 48(a) by denying the government’s motion to dismiss the indictment against the defendant, we did not address the propriety of the district court judge's decision to effectuate the denial by appointing special prosecutors. Id. at 514.

. In Cox, the grand jury asked the United States attorney to draft and sign true bills of indictment against certain individuals. The United States attorney, acting on instructions from the Attorney General, refused. The district court ordered the United States attorney to draft and sign such instruments. The United States attorney refused once again. The district court held the attorney in civil contempt. Id. at 169, 170.

. Article II, section 3 deposits the law enforcement power in the President by providing that he "shall take Care that the Laws be faithfully executed." No power to enforce the laws is vested in the judiciary by Article III.

. There is evidence in the record that Davis has, on various occasions, threatened that he will not present any evidence during the penalty trial. However, based upon his brief, it appears as though Davis will be utilizing his "residual doubt" argument during the penalty trial. There is also evidence in the record to indicate that Davis would prefer the death penalty to be imposed at the sentencing stage. Davis reasons that if he receives the death penalty his legal arguments concerning sufficiency of the evidence will be scrutinized more closely on appeal. His conviction will then have a greater likelihood of being reversed. Although the district court has determined that Davis's actions demonstrate that he invites the death penalty, Davis has consistently maintained that he is not on a suicide mission. Whatever the merits of Davis's legal strategy, we find that Davis has the right to conduct his penalty defense in the manner of his choosing "for it is he who suffers the consequences if the defense fails.” Faretta, 422 U.S. at 820, 95 S.Ct. 2525. Therefore, if he so chooses, Davis has the constitutional right to implement his legal strategy by arguing to the jury that he should receive the death penalty.

. The district court has found that "residual doubt” as to guilt is a legitimate mitigating factor appropriately argued during the penalty phase of a capital case. The issue of residual doubt is not before us in this appeal and we express no view regarding the correctness of the district court's ruling regarding residual doubt qualifying as a legitimate mitigating *385 factor for the jury to consider in assessing punishment.

. Nothing in this opinion should be construed by Davis as any indication that we think his defense strategy is a winning one. Indeed, it may be foolhardy. However, our task is not to cast judgment upon the wisdom of Davis’s strategy. Our task is simply to make sure that, as long as he has voluntarily and intelligently chosen to represent himself, he is given the opportunity to employ his own strategy, whatever it may be, without interference from an independent counsel acting at the behest of the judiciary.